FILED
2016 Jan-07  AM 11:29
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA,<br>STEPHANIE MCGEE AZAR, in her Official<br>Capacity as COMMISSIONER OF THE<br>ALABAMA MEDICAID AGENCY,<br>THOMAS M. MILLER, M.D., in his Official<br>Capacity as ACTING STATE HEALTH OFFICER,<br>and SPENCER COLLIER, in his Official Capacity<br>as SECRETARY OF THE ALABAMA LAW<br>ENFORCEMENT AGENCY,<br><br>      Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>UNITED STATES DEPARTMENT OF STATE,<br>JOHN KERRY, in his Official Capacity as<br>SECRETARY OF STATE, BUREAU OF<br>POPULATION, REFUGEES, AND MIGRATION,<br>ANNE C. RICHARD, in her Official Capacity as<br>ASSISTANT SECRETARY OF STATE,<br>UNITED STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES, SYLVIA BURWELL,<br>in her Official Capacity as SECRETARY OF<br>HEALTH AND HUMAN SERVICES, OFFICE<br>OF REFUGEE RESETTLEMENT,<br>ROBERT CAREY, in his Official Capacity as<br>DIRECTOR OF THE OFFICE OF REFUGEE<br>RESETTLEMENT,<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. _____ ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The State of Alabama, Stephanie McGee Azar, in her official capacity as Commissioner

of the Alabama Medicaid Agency, Thomas M. Miller, M.D., in his official capacity as Acting

State Health Officer, and Spencer Collier, in his official capacity as Secretary of the Alabama

Law Enforcement Agency, bring this complaint for declaratory and injunctive relief against the

1

United States of America, the United States Department of State, John Kerry, in his official capacity as Secretary of State, the State Department's Bureau of Population, Refugees, and Migration ("PRM"), Anne C. Richard, in her official capacity as Assistant Secretary of State and PRM's head, the United States Department of Health and Human Services, Sylvia Burwell, in her official capacity as Secretary of Health and Human Services, HHS's Office of Refugee Resettlement ("ORR"), and Robert Carey, in his official capacity as Director of ORR.

## INTRODUCTION

1.      The federal government must abide by federal law.  When it fails to do so, the courts are empowered to say so, declare the government's obligations under the law, and enter orders compelling the government to carry out those obligations.

2.      That is the relief the State of Alabama seeks here.  The Refugee Act of 1980 requires the federal government to consult with the State regarding the placement of refugees before those refugees are placed within its borders.  That consultation has not occurred.

3.      Therefore, the State requests that this Court enter a finding to that effect, declare the government's consultation obligations, and enter an order compelling the government to consult with the State as required by law.

## PARTIES

4.      The State of Alabama is a sovereign State of the United States of America.

5.      Stephanie McGee Azar is the Commissioner of the Alabama Medicaid Agency and in that capacity would consult with the federal government regarding the placement of refugees in Alabama if the government were fulfilling its consultation obligations.

6.      Thomas M. Miller, M.D., is the Acting State Health Officer, overseeing the Alabama Department of Public Health, and in that capacity would consult with the federal

government regarding the placement of refugees in Alabama if the government were fulfilling its consultation obligations.

7.      Spencer Collier is the Secretary of the Alabama Law Enforcement Agency and in that capacity would consult with the federal government regarding the placement of refugees in Alabama if the government were fulfilling its consultation obligations.

8.      The United States of America is a nation comprised of the several sovereign States and is obligated to abide by federal law, including the consultation obligations contained in the Refugee Act of 1980, and has failed to do so.

9.      The United States Department of State is a federal agency with consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.

10.     John Kerry is the Secretary of State and in that capacity has consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.

11.     The State Department's Bureau of Population, Refugees, and Migration is a federal agency with consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.   PRM is involved in the federal government's refugee resettlement program.

12.     Anne C. Richard is Assistant Secretary of State and PRM's head and in that capacity has consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.

13.     The United States Department of Health and Human Services is a federal agency with consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.

14.     Sylvia Burwell is Secretary of Health and Human Services and in that capacity has

consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.

15.     HHS's Office of Refugee Resettlement is a federal agency with consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations. ORR is involved in the federal government's refugee resettlement program.

16.     Robert Carey is the Director of ORR and in that capacity has consultation obligations to Alabama under the Refugee Act of 1980, and has failed to fulfill those obligations.

**JURISDICTION AND VENUE**

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this suit concerns breach of the statutory requirement under 8 U.S.C. § 1522 that the federal government "consult regularly" with States concerning "the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities."

18.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. § 706, 28 U.S.C. § 1361, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

19.     Venue is proper under 28 U.S.C. § 1391(e)(1)(C), because the State of Alabama resides in this district. *See Alabama v. U.S. Army Corps of Engineers*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005) (Bowdre, C.J.) (the State of Alabama "is ubiquitous within its borders" and therefore "resides in every district it encompasses, and venue is appropriate in every district in Alabama.") (internal quote marks and citation omitted); *see also* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3815 & n.38 (4th ed.) ("A state is held to reside in any district within it.") (citing *Alabama*).

## FACTUAL BACKGROUND

20.     The Refugee Act of 1980 establishes a framework for collaboration and cooperation between the federal government and the States in resettling refugees.  8 U.S.C. § 1522.  The Refugee Act of 1980 requires that the federal government "shall consult regularly (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities."   8 U.S.C. § 1522(a)(2)(A).[1]

21.     The federal government's obligation to consult with the States is thus clear and unequivocal.  The federal government "shall consult" with a State regarding the placement of refugees within its borders before those refugees are placed there.

22.     The legislative history reveals that Congress clarified that regular consultation take place "not less often than quarterly" and added the requirement that consultation take place "before [the refugees'] placement in those States and localities" in 1986 because the federal government was not engaging in adequate advance consultation with States and localities.  *See* An Act to amend the Immigration and Nationality Act to extend for two years the authorization of appropriations for refugee assistance, and for other purposes, Pub. L. No. 99-605, § 4, 100 Stat. 3449 (1986); 131 CONG. REC. H4244-03 (daily ed. June 13, 1985), 1985 WL 707790 (June 5, 1985 letter from Matthew B. Coffey, Executive Director of National Association of Counties, included in the record by Rep. Mazzoli) ("While the current Act provides for consultation

---

[1] The specific federal entities identified as having consultation obligations are "[t]he Director [of ORR] and the Federal agency administering" § 1522(b)(1)'s program of grants to and contracts with resettlement agencies.  8 U.S.C. § 1522(a)(2)(A).   The federal agency administering that grant and contract program is the State Department and PRM.   Regarding Alabama, the State Department has an agreement with the U.S. Conference of Catholic Bishops to function as a resettlement agency, which, in turn, has a sub-agreement with Catholic Social Services of the Greater Mobile Area.

between the federal government, voluntary resettlement agencies and state and local governments, the [consultation] requirement has not been pursued actively by the federal government."); H.R. Rep. No. 99-132 at 18-19 (noting that consultation was not taking place often enough and that the amendment was intended to "enhance the co-operation and communication between the Federal Government, State and local governments and the [voluntary agencies] regarding placement strategies and decisionmaking" and to "ensure [States' and localities'] input into the process and to improve their resettlement planning capacity."). Congress thus believed adequate advance consultation was essential to discharging the Act's collaborative and cooperative scheme.

23.     Rather than comply with § 1522's clear mandate and obligation, however, the Defendants have failed to provide the State of Alabama with sufficient information about the refugees who have been settled or will be settled within its borders, and have denied the State a meaningful role and input into the process of resettlement of those refugees.  That failure and denial has inhibited Alabama from being able to adequately plan for the arrival of refugees within its borders in regard to such matters as security and requests for social services and public assistance.

24.     The State of Alabama has both the sovereign authority and solemn duty to protect the health, safety, and welfare of its citizens and those within its borders.  Ala. Const. art. I, § 35 ("the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property"); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2578 (2012) ("Because the police power is controlled by 50 different States instead of one national sovereign, the facets of governing that touch on citizens' daily lives are normally administered by smaller governments closer to the governed.").  Alabama seeks to protect the health, safety, and

welfare of its citizens and those within its borders – including refugees already present within the State – by availing itself of the information to which it is entitled under the Refugee Act of 1980 including specifically 8 U.S.C. § 1522.

25.    Alabama also seeks to adequately plan and prepare for the arrival of refugees in regard to ensuing requests for social services and public assistance, including assistance Alabama may provide under the Act in conjunction with the federal government's refugee resettlement program, such as medical assistance overseen by the Alabama Medicaid Agency as part of that program.  *See* 8 U.S.C. § 1522(e).

26.    Regarding security, Alabama shares the concerns of the intelligence community – including those of the Nation's highest ranking intelligence officials – that sufficient information is lacking to ensure that certain refugees – including those from Syria – have neither provided material support to terrorists nor are terrorists themselves.[2]  Refugees who are terrorists or have provided material support to terrorists are excluded by federal law from admission to the United States.  8 U.S.C. § 1182(a)(3)(B).  In prior years, the United States has admitted fewer than 100 Syrian refugees per year.  President Obama recently announced his commitment to admit 10,000 Syrian refugees in fiscal year 2016.  *See* Gardiner Harris, David E. Sanger, and David M. Herszenhorn, *Obama Increases Number of Syrian Refugees for U.S. Resettlement to 10,000*, N.Y. TIMES (Sept. 10, 2015),  http://www.nytimes.com/2015/09/11/world/middleeast/obama-directs-administration-to-accept-10000-syrian-refugees.html?_r=0.  As part of this admission policy, refugees who provided material support to terrorists could be eligible for admission under a waiver granted by the federal government if, among other things, the support was "insignificant" and the refugee "poses no danger to the safety and security of the United States."  *See* Exercise of

---

[2] This action is in regard to consultation with respect to all refugees the federal government has settled or intends to settle in Alabama, not just those from Syria.

Authority under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 79 Fed. Reg. 6913-02 (Feb. 5, 2014).

27.     The Nation's highest ranking intelligence officials have expressed significant concern regarding the admission of Syrian refugees and the inability of the federal government to adequately and effectively conduct security checks on Syrian nationals.  The Director of the Federal Bureau of Investigation, James B. Comey, recently testified before Congress that the federal government may be unable to conduct effective security checks on Syrian nationals. Director Comey testified that in some instances "we can query our databases until the cows come home but nothing will show up because we have no record of that person."  *Nation's Top Security Officials' Concerns on Refugee Vetting*, U.S. House of Representatives Committee on Homeland Security, Nov. 19, 2015,  https://homeland.house.gov/press/nations-top-security-officials-concerns-on-refugee-vetting/.     Additionally, the Assistant Director of the FBI's Counterterrorism Division, Michael Steinbach, expressed his concern stating, "You have to have information to vet, so the concern is in Syria is that we don't have the systems in places on the ground to collect the information."  *Id.*  The Director of National Intelligence, General James Clapper (ret.), summed up the concerns of these federal counterterrorism experts: "We don't obviously put it past the likes of ISIL to infiltrate operatives among the refugees. . . That is a huge concern of ours."  *Id.*  The Secretary of Homeland Security, Jeh Johnson, expressed his concern, both before Congress and in conjunction with his recent release of a National Terrorism Advisory Bulletin, that terrorists may seek to "exploit" the refugee resettlement program.  *Id.*; *Johnson: Yes, terrorists could try to 'exploit' refugee system*, FOXNEWS.COM, Dec. 17, 2015, http://www.foxnews.com/politics/2015/12/17/johnson-yes-terrorists-could-try-to-exploit-refugee-system.html; *see also* Alison Smale, *Turkey's Role as Migrant Gateway Is Source of New*

*Urgency      for      E.U.*,      N.Y.      TIMES      (Nov.      18,      2015), http://www.nytimes.com/2015/11/19/world/europe/turkeys-role-as-migrant-gateway-is-source-of-new-urgency-for-eu.html?_r=0 (noting Turkey's detention of suspected terrorists posing as migrants in wake of revelation that the French police found a Syrian passport at one Paris attack site that was used by a man who had passed from Turkey to Greece).

28.     Because of concerns with the federal government's announcement of its intention to massively expand the admission of Syrian refugees (a one-hundred-fold increase), among whom could be terrorists or supporters of terrorists, Alabama's Governor Robert Bentley issued Executive Order No. 14.   That Executive Order states that "all departments, budget units, agencies, offices, entities, and officers of the executive branch of the State of Alabama, are authorized and directed to utilize all lawful means to prevent the resettlement of Syrian refugees in the State of Alabama until this order is rescinded."

29.     The Executive Order further directs the Alabama Department of Human Resources and the Alabama Department of Public Health "not to participate in the resettlement of any Syrian refugees in the State of Alabama," as well as authorizes and directs the Alabama Law Enforcement Agency "upon receiving information that a Syrian refugee is already located in the State of Alabama . . . to utilize all lawful means to monitor and avert threats within the State of Alabama."

30.     Governor Bentley sent a letter to President Obama on November 17, 2015, notifying the President of both the Governor's promulgation of Executive Order No. 14, and of his position of opposing admission of Syrian refugees into the State of Alabama in light of security concerns.   The letter enclosed a copy of Executive Order No. 14.   *See* Exhibit 1 (Nov. 17, 2015 Letter from Governor Bentley to President Obama & Executive Order No. 14).

31.      Following communications with the Obama Administration, on November 25, 2015, Governor Bentley sent a second letter to The White House, this time directed to Denis McDonough, Chief of Staff, and Simon Henshaw, Principal Deputy Assistant Secretary, U.S. Department of State, Bureau of Population, Refugees and Migration, advising that the State of Alabama has not received the consultations or quarterly reports statutorily required to be provided.  Governor Bentley specifically requested that the volunteer private agencies providing services in Alabama under agreements with the State Department be directed to "both provide these reports and conduct the required quarterly consultations with the State beginning immediately."  *See* Exhibit 2 (Nov. 25, 2015 Letter from Governor Bentley to Chief of Staff McDonough and Principal Deputy Assistant Secretary Henshaw).

32.      In response to Governor Bentley's letter and similar letters from other governors, The White House wrote to the Chair and Vice-Chair of the National Governors Association ("NGA"), proposing that official communication from the federal government to state governments regarding refugee resettlement be reported through the NGA.

33.      On December 2, 2015, Governor Bentley again wrote to Chief of Staff McDonough and expressed his "growing frustration with the lack of answers" and his objection to the proposal for information on refugee resettlement to be filtered through the NGA.  *See* Exhibit 3 (Dec. 2, 2015 Letter from Governor Bentley to Chief of Staff McDonough).  On December 30, 2015, Governor Bentley wrote to Lawrence Bartlett, PRM's Director, requesting that the State Department provide "a tailored report for Alabama regarding refugee resettlement" and that the State Department provide a copy of the quarterly reports it receives from the

resettlement agency in Alabama, Catholic Social Services.[3]  *See* Exhibit 4 (Dec. 30, 2015 Letter from Governor Bentley to Director Bartlett).

34.     Additionally, both of Alabama's United States Senators, Richard Shelby and Jeff Sessions, have written to Secretary Burwell, noting the violation of federal law by Health and Human Services based upon its failure to submit an annual report to Congress regarding the activities of ORR.  This communication of December 2, 2015, seeks immediate submission of ORR's Fiscal Year 2014 Annual Report to Congress.  *See* Exhibit 5 (Dec. 2, 2015 Letter from Congress to Secretary Burwell).

## CLAIMS FOR RELIEF

## COUNT I

**Declaratory Judgment and Injunction Under 28 U.S.C. §§ 2201-2202 Regarding the Defendants' Failure to Consult Regularly with the State of Alabama Regarding the Placement of Refugees in Alabama Before Such Placement**

35.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 34 as if fully set forth herein.

36.     The Refugee Act of 1980 requires that the federal government "shall consult regularly (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities."  8 U.S.C. § 1522(a)(2)(A).

37.     Defendants have breached their consultation duties and obligations under that statute of regular and advance consultation with the State of Alabama by: (1) failing and refusing to consult adequately with the State of Alabama on a regular basis and in advance regarding

---

[3] On December 30, 2015, the Alabama Law Enforcement Agency, in response to a request to Catholic Social Services, received three of its reports regarding implementation of the refugee resettlement program in Alabama.

placement of refugees within the State; (2) failing to provide Alabama with information necessary to assess security and other potential risks posed by refugees on a regular basis and in advance of their arrival in the State; and (3) failing to provide Alabama with information necessary to adequately plan and prepare for the arrival of refugees in the State in regard to security and requests for social services and public assistance.

38.     The State of Alabama requests a declaratory judgment from this Court setting forth the parties' rights and obligations accordingly and an injunction directing the Defendants to fulfill their statutory obligations.

## COUNT II

**Declaratory Judgment and Injunction Under 5 U.S.C. § 706 Regarding the Defendants' Failure to Consult Regularly with the State of Alabama Regarding the Placement of Refugees in Alabama Before Such Placement**

39.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40.     The Administrative Procedure Act requires the Court to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside any agency action" that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(1)-(2).

41.     "Agency action" means the "whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

42.     The Defendants' obligations under the Refugee Act of 1980 to consult on a regular basis and in advance with the State of Alabama, including to provide adequate information about refugees to be resettled in Alabama, constitute agency action unlawfully

withheld and unreasonably delayed under 5 U.S.C. § 706(1).  This Court therefore should compel the Defendants to comply with their statutory consultation obligations to Alabama.

43.     The Defendants' failure to consult on a regular basis and in advance with the State of Alabama, including failing to provide adequate information about refugees to be resettled in Alabama, constitutes agency action that is arbitrary, capricious, or otherwise unlawful under 5 U.S.C. § 706(2).  This Court therefore should hold that failure unlawful.

## COUNT III

**Declaratory Judgment and Injunction Under 28 U.S.C. § 1361 Regarding the Defendants' Failure to Consult Regularly with the State of Alabama Regarding the Placement of Refugees in Alabama Before Such Placement**

44.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45.     The Mandamus Act authorizes the Court to compel the Defendants to perform a duty owed to the Plaintiffs such as the statutory duty owed here.  28 U.S.C. § 1361.

46.     The Plaintiffs have a clear right to the regular and advance consultation prescribed by the Refugee Act of 1980.

47.     The Defendants have a clear statutory duty to provide that regular and advance consultation.

48.     An order from this Court compelling the Defendants to comply with their statutory duties is appropriate under the Mandamus Act if the Court finds that there is no other adequate remedy available to the Plaintiffs.

## REQUEST FOR RELIEF

Plaintiffs respectfully request the Court to award the following relief against Defendants:

A.     A declaration that the Defendants have breached their consultation duties and obligations to the State of Alabama under the Refugee Act of 1980.

B.     A declaration that those consultation duties and obligations include: (1) disclosure of sufficient information about the refugees who have been settled or will be settled within the State of Alabama so the State may consult with the federal government, assess security and other potential risks posed by refugees, and adequately plan for the arrival of refugees within its borders, including in regard to security and requests for social services and public assistance; (2) as part of that disclosure, production of the federal government's entire file on each refugee complete with medical history and the basis to support Medicaid eligibility so the Alabama Medicaid Agency may appropriately oversee medical assistance as part of the federal government's refugee resettlement program; (3) a certification by the Secretary of State, or the relevant federal official with knowledge if an official other than the Secretary of State, or a designee of such official, that those refugees pose no security risk; and (4) allowing the State a meaningful role and input into the process of resettlement of those refugees.

C.     A declaration that the Defendants may not place refugees within the State of Alabama unless and until they have fulfilled those consultation duties and obligations to the State of Alabama.

D.     A permanent injunction compelling the Defendants to comply with those consultation duties and obligations to the State of Alabama.

E.     Reasonable and necessary attorney's fees due to Plaintiffs; and

F.     Such other and further relief to which Plaintiffs are justly entitled at law and in equity.

14

DATED: January 7, 2016                      Respectfully submitted,

                                            s/ Robert K. Spotswood
                                            Robert K. Spotswood
                                            Joshua K. Payne
                                            SPOTSWOOD SANSOM & SANSBURY LLC
                                            One Federal Place
                                            1819 Fifth Avenue North, Suite 1050
                                            Birmingham, Alabama 35203
                                            TEL:   (205) 986-3620
                                            FAX:   (205) 986-3639
                                            E-mail:      rks@spotswoodllc.com
                                                         jpayne@spotswoodllc.com

                                            David B. Byrne, Jr.
                                            Chief Legal Advisor
                                            OFFICE OF GOVERNOR ROBERT BENTLEY
                                            State Capitol, 600 Dexter Avenue
                                            Montgomery, Alabama 36130
                                            TEL:   (334) 242-7120
                                            FAX:   (334) 242-2335
                                            E-mail:      pam.chesnutt@governor.alabama.gov

                                            *Attorneys for the Plaintiffs*

Defendants will be served as follows:

United States of America
c/o Civil Process Clerk
Office of U.S. Attorney Joyce Vance
1801 4th Avenue North
Birmingham, AL 35203

United States Department of State
2201 C Street NW
Washington, DC 20520

John Kerry
United States Department of State, 7th Floor
2201 C Street NW
Washington, DC 20520

Bureau of Population, Refugees, and Migration
United States Department of State, HST 6825
2201 C Street NW
Washington, DC 20520

Anne C. Richard
Bureau of Population, Refugees, and Migration
United States Department of State, HST 6825
2201 C Street NW
Washington, DC 20520

United States Department of Health and
Human Services
200 Independence Avenue SW
Washington, DC 20201

Sylvia Burwell
United States Department of Health and
Human Services
200 Independence Avenue SW
Washington, DC 20201

Office of Refugee Resettlement
Administration for Children & Families
United States Department of Health and
Human Services
330 C Street SW
Washington, DC 20201

Robert Carey
Office of Refugee Resettlement
Administration for Children & Families
United States Department of Health and
Human Services
330 C Street SW
Washington, DC 20201