

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| _____ ) | |
| ) | |
| STATE OF ALABAMA, *et al.*,   ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | |
| v.   ) | Civil Action No. |
| ) | 2:16-cv-00029-JEO |
| UNITED STATES OF AMERICA,   ) | |
| *et al.*,   ) | |
| ) | |
| Defendants.   ) | |
| ) | |
| _____ ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Dated:  March 8, 2016

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOYCE WHITE VANCE
United States Attorney
JOSEPH H. HUNT
Director
SHEILA M. LIEBER                United States Department of Justice
Deputy Director                 Civil Division, Federal Programs Branch
ANTHONY J. COPPOLINO            20 Massachusetts Avenue, N.W.
Deputy Director                 Washington, D.C.  20530
JAMES J. GILLIGAN               Tel: (202) 305-8902
Special Litigation Counsel      Fax: (202) 616-8470
MICHELLE R. BENNETT             Email: michelle.bennett@usdoj.gov
STUART J. ROBINSON
Trial Attorneys                 *Attorneys for Defendants*

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................4

   Statutory Background ........................................................................................4

   Plaintiffs' Complaint .........................................................................................8

ARGUMENT .........................................................................................................10

  A.  Plaintiffs Have No Actionable Basis To Compel Consultation
      Before Individual Refugees May Be Resettled In Alabama .........................11

      1.   The Refugee Act ....................................................................................11

      2.   The Declaratory Judgment Act ..............................................................14

      3.   The Administrative Procedure Act .........................................................15

      4.   The Mandamus Act ................................................................................19

  B.  Section 1522(a)(2)(A) Does Not Require the Federal Government To
      Provide Plaintiffs The Relief They Seek. ....................................................21

CONCLUSION ......................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>CASES</u>

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ................................................................. 11, 12

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ...........................................11

*Arizona v. United States*,
  132 S. Ct. 2492 (2012) ...........................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................10

*Brunner v. Ohio Republican Party*,
  555 U.S. 5 (2008) .....................................................................12

*Buck v. Am. Airlines, Inc.*,
  476 F.3d 29 (1st Cir. 2007) ....................................................14

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) ................................................................12

*Cash v. Barnhart*,
  327 F.3d 1252 (11th Cir. 2003) ...........................................20

*Davis v. United States*,
  499 F.3d 590 (6th Cir. 2007) .................................................15

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997) ..............................................21

*Elkins v. Moreno*,
  435 U.S. 647 (1978) ..................................................................4

*Fund for Animals, Inc. v. BLM*,
  460 F.3d 13 (D.C. Cir. 2006) ........................................................... 15, 16

*Gilbert Equipment Co., Inc. v. Higgins*,
  709 F. Supp. 1071 (S.D. Ala. 1989) ....................................................21

*Graham v. Richardson*,
  403 U.S. 365 (1971) ..........................................................................24

*Grinberg v. Swacina*,
  478 F. Supp. 2d 1350 (S.D. Fla. 2007) ...............................................17

*Guerrero v. Clinton*,
  157 F.3d 1190 (9th Cir. 1998) ...........................................................16

*Harris Cty. Texas v. MERSCORP Inc.*,
  791 F.3d 545 (5th Cir. 2015) .............................................................14

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*,
  641 F.3d 1259 (11th Cir. 2011) ............................................... 17, 19, 20

*Hudson Ins. Co. v. Am. Elec. Corp.*,
  957 F.2d 826 (11th Cir. 1992) ...........................................................14

*Independence Mining Co. v. Babbitt*,
  105 F.3d 502 (9th Cir. 1997) .............................................................19

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) .............................................................16

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986) ..........................................................................19

*Kerr v. U.S. Dist. Ct.*,
  426 U.S. 394 (1976) ..........................................................................20

*Love v. Delta Air Lines*,
  310 F.3d 1347 (11th Cir. 2002) ................................................... 12, 13

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*,
  723 F.2d 1173 (5th Cir. 1984) ...........................................................15

*Mathews v. Diaz,*
    426 U.S. 67 (1976) ............................................................................13

*McDonald v. S. Farm Bureau Life Ins. Co.,*
    291 F.3d 718 (11th Cir. 2002) ..........................................................14

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ..................................................................... passim

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ............................................................14

*Plyler v. Doe,*
    457 U.S. 202 (1982) ..........................................................................13

*Schilling v. Rogers,*
    363 U.S. 666 (1960) ..........................................................................14

*Skelly Oil Co. v. Phillips Petrol. Co.,*
    339 U.S. 667 (1950) ..........................................................................14

*Toll v. Moreno,*
    458 U.S. 1 (1982) ................................................................... 4, 13, 24

*Truax v. Raich,*
    239 U.S. 33 (1915) ............................................................................24

*United States v. Salmona,*
    810 F.3d 806 (11th Cir. 2016) ............................................ 19, 20, 21

*Universities Research Ass'n, Inc. v. Coutu,*
    450 U.S. 754 (1981) ..........................................................................12

*Whitlock Const., Inc. v. Glickman,*
    71 F. Supp. 2d 1154 (D. Wyo. 1999) ................................................16

*Wiersum v. U.S. Bank, N.A.,*
    785 F.3d 483 (11th Cir. 2015) ..........................................................23

*Wild Fish Conservancy v. Jewell,*
    730 F.3d 791 (9th Cir. 2013) ............................................................16

## STATUTES

28 U.S.C. § 1361 .................................................................................. 10, 19

28 U.S.C. §§ 2201-2202 .................................................................... 10, 14

5 U.S.C. § 701 ............................................................................................15

5 U.S.C. § 706 ........................................................................... 10, 15, 19

5 U.S.C. § 551 ........................................................................... 15, 16

8 U.S.C. § 1522 ................................................................................. passim

8 U.S.C. § 1157 ........................................................................................5

8 U.S.C. § 1101 ........................................................................................4

Refugee Act of 1980, Pub. L. No. 96-212 ................................................4

Refugee Assistance Extension Act of 1986, Pub. L. No. 99-605 ...................... 6, 23

## RULES

Fed. R. Civ. P. 12 ....................................................................................10

## REGULATIONS

45 C.F.R. § 400.301(c)..............................................................................7

45 C.F.R. § 400.69 ...................................................................................7

80 Fed. Reg. 62433 ..................................................................................5

## OTHER AUTHORITIES

H. R. Rep. No. 99-132 (1985).................................................... 6, 13, 23, 24

## INTRODUCTION

Plaintiffs, the State of Alabama and several State health and law-enforcement officials, seek a court order compelling the Federal Government to provide the State with information concerning "security and other potential risks" that may be posed by refugees who have been or will be resettled in Alabama under the U.S. Refugee Admissions Program.  Complaint for Declaratory and Injunctive Relief (Dkt. No. 1) (the "Complaint," or "Compl.") at 14 (Request for Relief ¶ B).  Plaintiffs also seek the production of the Federal Government's "entire file" on each such refugee, and a certification by the Secretary of State that each refugee poses no "security risk."  *Id*.  Plaintiffs attempt to base their request for this unprecedented relief on a provision of the Refugee Act of 1980, which directs the Federal Government to consult periodically with State and local governments about sponsorship procedures and the distribution of refugees among the States.  Plaintiffs' claims fail, however, as a matter of law.

Plaintiffs maintain that the Federal Government has not provided Alabama with "sufficient information" about the refugees who have been or will be resettled there, and has denied the State a "meaningful role and input into" the process of resettling them.  Plaintiffs neglect to mention, however, that Alabama withdrew from the Refugee Resettlement Program in May 2001, citing the sharply decreased refugee population in Alabama, and ceded responsibility for State-administered refugee services to Catholic Social Services ("CSS") of Mobile.  *See* May 22,

2001, Letter from Don Siegelman, Governor, to Carmel Clay-Thompson, Acting Director, Office of Refugee Resettlement (Exh. 1, hereto).  CSS is the Alabama affiliate of the U.S. Conference of Catholic Bishops ("USCCB"), one of nine volunteer resettlement agencies that participate in the U.S. Refugee Admissions Program, together with U.S. Government agencies and domestic non-profit and international organizations, to screen, transport, and provide resettlement services for refugees.  The Federal Government's agreements with these resettlement agencies require them, on the Government's behalf, to conduct quarterly consultations with relevant stakeholders, including State and local officials, concerning the sponsorship process and the intended distribution of refugees in State localities before their placement.  In fulfillment of this requirement, CSS of Mobile conducts quarterly consultations with local government officials, in which officials of the Alabama Medicaid Agency are also invited to participate and routinely do so.  The subjects addressed at these quarterly consultations include year-to-date and projected arrivals of refugees in the State, characteristics of the arriving refugee groups, and the capacity of the State and local governments and local volunteer agencies to meet the needs of the actual and projected caseload, as such issues arise.

The Complaint does not acknowledge any of these facts, but it is unnecessary to consider them at this time to dispose of this case, because Plaintiffs' claims lack merit even on their own terms.  First, none of the statutes on

2

which Plaintiffs rely provides them with an actionable basis to compel consultation

before the Federal Government may exercise its plenary authority to admit and

resettle refugees in a State.  As recently held in the Northern District of Texas in a

quite similar case, neither the Refugee Act, nor the Declaratory Judgment Act, nor

the Administrative Procedure Act, "creates a cause of action . . . to compel advance

consultation regarding the resettlement of individual . . . refugees."  *Texas Health*

*& Human Servs. Comm'n v. United States*, No. 3:15-cv-3851 (DCG), Order (N.D.

Tex. Feb. 8, 2016) (Exh. 2, hereto) at 6-10.  In addition, the Mandamus Act, on

which Plaintiffs also rely, does not supply a basis for relief.

     Second, even if Plaintiffs had an actionable basis to enforce the Refugee

Act's directives, the Act does not require the Federal Government to furnish States

with the information Plaintiffs seek about individual refugees.  The statute requires

only that the Federal Government consult on a regular basis with the States about

the "sponsorship process" and "the intended distribution of refugees among the

States."  8 U.S.C. § 1522(a)(2)(A).  It does not create an enforceable legal

obligation to provide a State with information about individual refugees before

they may be resettled there.  That conclusion is not altered by Plaintiffs'

speculative concern that certain individuals among the relatively small number of

refugees who have been or will be resettled in Alabama may be terrorists or

terrorist sympathizers.   Refugees are one of the most thoroughly vetted

populations seeking admission to the United States, *see*

https://www.uscis.gov/sites/default/files/USCIS/Refugee%2C%20Asylum%2C%2

0and%20Int%27l%20Ops/Refugee_Security_Screening_Fact_Sheet.pdf (last

visited Mar. 8, 2016), and as held by the court in *Texas Health & Human Servs.*

*Comm'n*, "it is the [Federal Government] that is charged with assessing and

mitigating [any] risk" that individual refugees may pose, "not the [S]tates and not

the courts."  Exh. 2, hereto, at 10.

 For these reasons, discussed in greater detail below, Plaintiffs' Complaint

should be dismissed.

## BACKGROUND

### Statutory Background

 The Constitution allocates to the Federal Government the exclusive authority

to regulate the "admission, naturalization, and residence of aliens in the United

States or the several states," leaving the States no power to "add to [or] take from

the conditions lawfully imposed by Congress."  *See, e.g.*, *Toll v. Moreno*, 458 U.S.

1, 11 (1982).  Pursuant to this authority, Congress enacted the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a "comprehensive and complete

code covering all aspects of admission of aliens to this country."  *Elkins v. Moreno*,

435 U.S. 647, 664 (1978).  The Refugee Act of 1980, Pub. L. No. 96-212,

amended the INA to establish "a permanent and systematic procedure for the

admission to this country of refugees of special humanitarian concern to the United

States," and "to provide comprehensive and uniform provisions for [their] effective

resettlement." Pub. L. No. 96-212, § 101(b). The Act provides that the number of refugees admitted annually shall generally be "such number as the President determines, before the beginning of the fiscal year and after appropriate consultations [with Congress], is justified by humanitarian concerns or is otherwise in the national interest." 8 U.S.C. § 1157(a)(2). For the current fiscal year, the President has determined, after appropriate consultations with Congress, that "[t]he admission of up to 85,000 refugees to the United States . . . is justified by humanitarian concerns or is otherwise in the national interest." *See* Presidential Determination on Refugee Admissions for Fiscal Year 2016, 80 Fed. Reg. 62433 (Sept. 29, 2015). The President also recently announced that at least 10,000 of the refugees admitted to the United States in fiscal year 2016 will be from Syria. *See* White House, *Press Briefing by Press Secretary Josh Earnest, 9/10/15*, https://www.whitehouse.gov/the-press-office/2015/09/11/press-briefing-press-secretary-josh-earnest-91015 (last visited Mar. 8, 2016).

Under the Refugee Act, the Federal Government may issue grants to and contract with State and local governments and private non-profit agencies to manage the initial resettlement of, and provide resettlement assistance to, refugees admitted to the United States. 8 U.S.C. § 1522. Pursuant to this authority, the State Department Bureau of Population, Refugees, and Migration ("PRM") maintains and oversees the U.S. Refugee Admissions Program, a public-private partnership involving U.S. Government agencies, domestic non-profit

5

organizations, and international organizations to screen, transport, and provide resettlement services for refugees, while safeguarding the American public from threats to our national security. *Id*. § 1522(b)(1).

The Refugee Act, as amended by the Refugee Assistance Extension Act of 1986, Pub. L. No. 99-605, directs that the Federal Government, in carrying out this initial program of resettlement under § 1522(b)(1), shall

> consult regularly (not less often than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities.

8 U.S.C. § 1522(a)(2)(A).  ("Sponsorship" refers to the process by which resettlement agencies commit to providing assistance to each newly arrived refugee they resettle. *See* Refugee Resettlement in the United States, http://www.state.gov/j/prm/releases/factsheets/2010/181051.htm (last visited Mar. 8, 2016)). This consultation requirement is "not intended to give States and localities any veto power over refugee placement decisions, but rather to ensure their input into the process and to improve their resettlement planning capacity." H.R. Rep. No. 132, 99th Cong., 1st Sess., 19 (1985).

The Department of Health and Human Services Office of Refugee Resettlement ("ORR") is also authorized to make grants to and contract with public and private non-profit agencies to assist refugees in achieving economic self-sufficiency, including job training and English-language education.  8 U.S.C.

§ 1522(c).  The Federal Government may also make grants to and contract with State and local governments and private non-profit agencies, and provide reimbursement to States, to cover the costs of cash and medical assistance provided to refugees.  *Id.* § 1522(e).  In order to receive federal funds for these purposes, a State must submit a plan that meets the requirements imposed by the INA.  *Id.* § 1522(a)(6).  Among other requirements, assistance and services funded under the Refugee Act must be provided to refugees "without regard to race, religion, nationality, sex, or political opinion."  *Id.* § 1522(a)(5).

Federal financial support for refugee assistance and social services is not necessarily dependent, however, on a State's participation in the Refugee Resettlement Program.  In lieu of a State-administered program a State may choose, pursuant to 8 U.S.C. § 1522(e)(7), to establish a "Wilson-Fish program" (named for the legislation's sponsors) under which federal funding for interim financial assistance, medical assistance, employment services, and other social services provided to eligible refugee populations is administered in whole or in part by private non-profit organizations instead of the State.  *See also* 45 C.F.R. § 400.69.  Under the Wilson-Fish model, in the event a State chooses to withdraw from the Refugee Resettlement Program, the Director of ORR may select one or more grantees (typically non-profit organizations) to administer the program in that State.  45 C.F.R. § 400.301(c).  Wilson-Fish grantees must generally adhere to the same regulations applicable to States, and are generally responsible for providing

7

the same assistance and services to eligible refugees.  *Id.*; *see also* ORR, Wilson-Fish Alternative Program Guidelines for Fiscal Year 2015-2016, http://www.acf.hhs.gov/programs/orr/resource/wilson-fish-alternative-program-guidelines-for-fiscal-year-2015-2016 (last visited Mar. 8, 2016).

**Plaintiffs' Complaint**

As alluded to in the Complaint, CSS has administered refugee assistance and social services programs in Alabama, under the Wilson-Fish model, since the State's withdrawal from the Refugee Resettlement Program in 2001.  *See* Compl. at 5 n.1; *id.* Exh. 2 at 1; *see also* Exh. 1, hereto.  CSS is an affiliate of USCCB, which has an agreement with PRM to function as a resettlement agency.  *See* Compl. at 5 n.1.  On November 16, 2015, Alabama Governor Robert Bentley signed an Executive Order, purportedly directing State agencies "to prevent the resettlement of Syrian refugees in the State of Alabama," citing as justification "a coordinated series of terrorist attacks in Paris, France."  *Id.*, Exh. 1.  Governor Bentley subsequently wrote to PRM, requesting "a tailored report for Alabama regarding refugee resettlement," as well as quarterly reports submitted by CSS to the Department of State.  *Id.*, Exh. 4.  The Governor stated that "[t]here should be no filter between the federal government and state governments" regarding information about refugee resettlement.  *Id.*  On December 30, 2015, CSS provided to the Alabama Law Enforcement Agency copies of the most recent quarterly

reports regarding resettlement that CSS had submitted to USCCB.  *Id.* at 11 n.3.

Plaintiffs brought this suit on January 7, 2016.

The Complaint alleges that the Federal Government, in violation of the

Refugee Act's consultation requirement, "ha[s] failed to provide the State of

Alabama with sufficient information about the refugees who have been settled or

will be settled within its borders, and ha[s] denied the State a meaningful role and

input into the process of resettlement of those refugees." *Id.* ¶ 23.  Plaintiffs claim

that the Federal Government has thus "inhibited Alabama from being able to

adequately plan for the arrival of refugees within its borders in regard to such

matters as security and requests for social services and public assistance." *Id.*

Plaintiffs seek declaratory and injunctive relief providing that the Federal

Government "may not place refugees within the State of Alabama unless and until"

it has (1) furnished the State with "sufficient information" about refugees who

have been or will be resettled in Alabama, so the State may "assess security and

other potential risks" they may pose and "adequately plan" for their arrival;

(2) produced "the federal government's entire file on each refugee complete with

medical history"; (3) submitted "a certification by the Secretary of State," or other

federal officials, "that those refugees pose no security risk"; and (4) "allow[ed] the

9

State a meaningful role and input into the process of the resettlement of those refugees." *Id.* at 14 (Request for Relief).[1]

In support of this request, Count I of the Complaint asserts a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, premised on the allegation that the Federal Government has breached the "regular and advance consultation" obligations under 8 U.S.C. § 1522(a)(2)(A).  *Id.* ¶¶ 35-38.  Count II asserts a claim under the Administrative Procedure Act to compel "agency action unlawfully withheld," 5 U.S.C. § 706(1), and to set aside agency action that is arbitrary, capricious, or otherwise unlawful, *id.* § 706(2).  Compl. ¶¶ 39-43.  Count III asserts a claim for mandatory relief under the Mandamus Act, 28 U.S.C. § 1361. *Id.* ¶¶ 44-48.

## ARGUMENT

This case should be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are not sufficient.  *Id.* at 678 (quotation omitted).  Rather, a court must disregard

---

[1] Although the Governor's Executive Order purportedly addresses the resettlement of Syrian refugees only, this lawsuit concerns "all refugees the federal government has settled or intends to settle in Alabama, not just those from Syria."  Compl. at 7 n.2.

"pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679; *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289-90 (11th Cir. 2010). Plaintiffs have not met this standard, because their claims fail as a matter of law.

## A.   Plaintiffs Have No Actionable Basis To Compel Consultation Before Individual Refugees May Be Resettled In Alabama.

Plaintiffs' Complaint should be dismissed first because none of the statutes on which Plaintiffs rely provides a legal basis to compel consultation before individual refugees are placed in the State of Alabama.  In a similar case brought by the State of Texas, the district court concluded that neither the Refugee Act, nor the Declaratory Judgment Act, nor the Administrative Procedure Act ("APA") provides a viable cause of action to States to compel consultation.  *See Texas Health & Human Servs. Comm'n*, Exh. 2, hereto, at 6-10.  The same is true here. Plaintiffs' addition of a mandamus claim does not save their case from dismissal, as Plaintiffs have not satisfied the requirements for mandamus, either.

### 1.   The Refugee Act

Section 1522(a)(2)(A) of the Refugee Act does not itself create a cause of action to compel consultation before the Federal Government may exercise its plenary authority to admit and resettle refugees.  "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532

11

U.S. 275, 286 (2001).  "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id.*  "There must be clear evidence of Congress's intent to create a cause of action."  *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002).  Where the necessary intent is absent, "a cause of action does not exist and courts may not create one."  *Sandoval*, 532 U.S. at 286-87.

Section 1522 has no express provision creating a private cause of action for the States.  The statute does not contain the sort of "rights-creating language" that courts find "critical" to imputing to Congress an intent to create a private right of action.  *Sandoval*, 532 U.S. at 288; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) (per curiam); *Love*, 310 F.3d at 1352 (11th Cir. 2002) (looking "first and foremost" to the "statutory text for rights-creating language" (quotations omitted)).  In *Sandoval*, the Supreme Court distinguished between the rights-creating language, "[n]o person . . . shall . . . be subjected to discrimination," and its antithesis, "[e]ach Federal department and agency . . . is authorized and directed to effectuate the provisions of [the statute]."  532 U.S. at 288-89.  Section 1522(a)(2)(A) falls squarely within the latter camp.  It does not "explicitly confer[] [any] right directly on" the States.  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979).  Instead, it is "phrased as a directive to federal agencies engaged in the distribution of public funds" under § 1522(b)(1).  *Sandoval*, 532 U.S. at 289.  Courts typically do not "infer a private remedy where [as here] Congress . . . has

framed the statute simply as a . . . command to a federal agency." *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772 (1981); *see Texas Health & Human Servs. Comm'n*, Exh. 2, hereto, at 8 (concluding that § 1522(a)(2)(A) does not "contain the kind of rights-creating language necessary" to "convey a congressional intent to create a cause of action").

This understanding of § 1522(a)(2)(A) is buttressed by the context in which Congress legislated.  The Constitution vests authority to regulate the admission, naturalization, and residence of aliens exclusively with the Federal Government. *Toll*, 458 U.S. at 10; *see Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976).  Under our constitutional structure, States may not interfere with the Federal Government's execution of the immigration laws or impose conditions on the admission or residence of aliens that Congress has not authorized.  *Toll*, 458 U.S. at 11; *see Arizona*, 132 S. Ct. at 2498; *Plyler v. Doe*, 457 U.S. 202, 225 (1982).  Nothing in § 1522 suggests an intent by Congress to invert the constitutional order by permitting States to veto the Federal Government's refugee resettlement determinations on the ground that States were not furnished person-specific information about individual refugees.  The legislative history demonstrates just the opposite, "emphasiz[ing] that the[]

requirements [of § 1522] are not intended to give States and localities any veto

power over refugee placement decisions." H.R. Rep. No. 99-132 at 19.[2]

### 2.     The Declaratory Judgment Act

Plaintiffs' reliance on the Declaratory Judgment Act—on which Count I of

the Complaint, ¶¶ 35-38, is based, *see id.* at 11 (citing 28 U.S.C. §§ 2201-02)—

does not alter this conclusion. The Declaratory Judgment Act does not create a

substantive cause of action. *See Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826,

828-29 (11th Cir. 1992); *see also, e.g.*, *Harris Cty. Texas v. MERSCORP Inc.*, 791

F.3d 545, 552-53 (5th Cir. 2015); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n. 3

(1st Cir. 2007). The Act "enlarged the range of remedies available in the federal

courts," but it did not create a new right to seek those remedies. *Skelly Oil Co. v.*

*Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *see Schilling v. Rogers,* 363 U.S.

666, 677 (1960); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001).

Hence, to maintain a declaratory judgment action a plaintiff must point to a cause

of action arising under some other law and cannot use the Declaratory Judgment

Act to create a private right of action where none exists. *See, e.g.*, *McDonald v. S.*

*Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722, 726 (11th Cir. 2002) (affirming

dismissal of case that sought relief under the Declaratory Judgment Act because

---

[2] Recourse to the legislative history, however, should be unnecessary here. *See Love*,
310 F.3d at 1353 (explaining that courts may consult legislative history "if—and *only* if—
statutory text and structure have not conclusively resolved" whether Congress intended to create
a private right of action).

the plaintiff had no private right of action); *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984). Plaintiffs have identified no such law here; thus the Declaratory Judgment Act provides them no basis for relief. *See Texas Health & Human Servs. Comm'n*, Exh. 2, hereto, at 7.

### 3. The Administrative Procedure Act

Count II of the Complaint asserts a claim under the APA to "compel agency action" (*i.e.*, consultation) "unlawfully withheld." Compl. ¶¶ 40-43; *see* 5 U.S.C. § 706(1). Such a claim can proceed "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004) (emphasis omitted). Plaintiffs cannot move forward on this claim, either.

First, the consultation contemplated by § 1522(a)(2)(A) is not "agency action." *SUWA*, 542 U.S. at 64. The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2). Each of these categories of action is then further defined. *See id.* §§ 551(4), (6), (8), (10), (11). A "failure to act" is "properly understood as . . . a failure to take one of the agency actions . . . defined in § 551(13)." *SUWA*, 542 U.S. at 62.

Courts "have long recognized" that the term "agency action," while "expansive," "is not so all-encompassing as to authorize . . . judicial review over

everything done" by an agency. *Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 19-20 (D.C. Cir. 2006); *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004); *see Whitlock Const., Inc. v. Glickman*, 71 F. Supp. 2d 1154, 1159 (D. Wyo. 1999). "Agencies prepare proposals, conduct studies, meet [*i.e.*, consult] with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Fund for Animals*, 460 F.3d at 19-20. Such activities do not constitute agency action. *See id.*

The consultation contemplated by § 1522(a)(2)(A) is not an "agency action." Rather, it is a recurrent (at least quarterly) process through which the Federal Government communicates with State and local governments concerning statutorily designated topics pertaining to refugee resettlement. *Id.* Such a process cannot reasonably be viewed as a "rule," 5 U.S.C. § 551(4), "order," *id.* § 551(6), "license," *id.* § 551(8), "sanction," *id.* § 551(10), or "relief," *id.* § 551(11). *See Texas Health & Human Servs. Comm'n*, Exh. 2, hereto, at 10 ("Regular advance consultation is not [agency action] within the meaning of section 551."); *see also, e.g.*, *Fund for Animals*, 460 F.3d at 19-20 (an agency's budget request is not agency action); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013) (closing the gates of a dam is not fairly analogous to a "rule, order, license, sanction, [or] relief"); *Guerrero v. Clinton*, 157 F.3d 1190, 1195 (9th Cir. 1998) (agency response to a congressional reporting requirement is not agency action).

Moreover, the challenged agency conduct must also be "discrete." *SUWA*, 542 U.S. at 64, 67.  The ongoing process of "regular[ ]" consultation called for by § 1522(a)(2)(A) is not a "discrete" action subject to compulsion under the APA. *See id.* at 64-65; *Texas Health & Human Servs. Comm'n*, Exh. 2, hereto, at 10 (holding that "the Refugee Act's advance consultation requirement is best understood as an ongoing, dynamic process," "not the kind of discrete agency action reviewable by federal courts").

Even where discrete agency action is involved, only agency action that is "legally *required*" can be compelled under the APA.  *SUWA*, 542 U.S. at 63.  "In this regard the APA carrie[s] forward the traditional practice" under writs of mandamus, which were limited "to enforcement of a 'specific, unequivocal command,'" *id.*, and "rules out judicial direction of . . . action that is not demanded by law," *id.* at 65.  Hence, agency action may be compelled only where the plaintiff can establish "a clear right to the relief sought" and a "clear, non-discretionary duty" by the defendant to do the particular act.  *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1354-55 (S.D. Fla. 2007); *see Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1268 (11th Cir. 2011).

Plaintiffs' APA claim does not meet this exacting standard.  The Federal Government has no duty, much less a plainly defined and unequivocal one, to provide to Plaintiffs information about unspecified "risks" that individual refugees may present, the Government's "entire file on each refugee" scheduled for

17

resettlement in Alabama, or "a certification by the Secretary of State . . . that [a] refugee[] pose[s] no security risk."  Compl. at 14 (Request for Relief ¶ B).  And while it is unclear what Plaintiffs intend when they demand a "role and input into the resettlement of those refugees," *id.*, if they mean the State should be given a role in deciding which individual refugees should or should not be resettled there, the Federal Government likewise has no duty to afford the State such a role.  To the contrary, as explained more fully below, the Refugee Act specifies the two and only two subjects as to which the Federal Government must consult with State and local governments, the "sponsorship process," and the "intended distribution of refugees among the States and localities."  8 U.S.C. § 1522(a)(2)(A).  Neither subject encompasses specific information or certifications about individual refugees or the decision to resettle particular refugees in a given State.  Thus, the Refugee Act does not specifically and unequivocally command the disclosure of such information (or the extension of such a role) to Plaintiffs, *see SUWA*, 542 U.S. at 65, and, as a matter of law, the Federal Government cannot be compelled under the APA to provide it."[3]

---

[3]  Count II also asserts that the Federal Government's claimed "failure to consult" with the State "constitutes agency action that is arbitrary, capricious, or otherwise unlawful under 5 U.S.C. § 706(2)."  Compl. ¶ 43.  But because this claim, by its own terms, is predicated on an alleged failure to act, it is properly viewed as nothing more than a restatement of Plaintiffs' claim under 5 U.S.C. § 706(1) to compel agency action unlawfully withheld, *see SUWA*, 542 U.S. at 62-65, and thus, for the reasons explained above, it states no viable claim for relief.

### 4.     The Mandamus Act

Count III of the Complaint, ¶¶ 44-48, seeking relief under the Mandamus

Act, 28 U.S.C. § 1361, should also be dismissed for failure to meet any of the

"stringent" requirements that must be satisfied before a writ of mandamus may

issue.  *United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016).

Title 28, U.S.C. § 1361 provides that:

> The district courts shall have original jurisdiction of any action in the
> nature of mandamus to compel an officer or employee of the United
> States or any agency thereof to perform a duty owed to the plaintiff.

The federal courts, including the Eleventh Circuit, generally consider the standards

for mandamus relief under § 1361 to be indistinguishable from the requirements of

an APA claim to compel agency action under 5 U.S.C. § 706(1).  *See Hollywood*

*Mobile Estates*, 641 F.3d at 1268, citing *Japan Whaling Ass'n v. Am. Cetacean*

*Soc'y*, 478 U.S. 221, 230 n.4 (1986); *Independence Mining Co. v. Babbitt*, 105

F.3d 502, 507 (9th Cir. 1997) (holding that the standards for mandamus and relief

under § 706(1) are "in essence" the same); *see also SUWA, supra*, 542 U.S. at 63

(observing that § 706(1) "carrie[s] forward the traditional practice" under writs of

mandamus).  As discussed above, Plaintiffs' allegations fail to establish the clear

right to relief required for a mandatory injunction under the APA, which likewise

dooms Plaintiffs' mandamus claim.

To the extent a mandamus claim may be regarded as distinct from a claim

under § 706(1), the requirements for mandamus relief are, if anything, even more

19

demanding.  "[M]andamus is a 'drastic' remedy, 'to be invoked only in extraordinary situations.'"  *Salmona*, 810 F.3d at 811, quoting *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976); *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) ("mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases.") (citation omitted).  "Mandamus relief is appropriate only when:  (1) there is no other adequate remedy and (2) the 'plaintiff has a clear right to the relief requested' (in other words the defendant must have 'a clear duty to act')."  *Salmona*, 810 F.3d at 811, quoting *Cash*, 327 F.3d at 1258; *see Hollywood Mobile Estates*, 641 F.3d at 1268.  Plaintiffs' mandamus claim meets neither of these criteria.

First, "[t]he availability of [mandatory injunctive] relief under the [APA] . . . forecloses a grant of a writ of mandamus," *Hollywood Mobile Estates*, 641 F.3d at 1268, even though Plaintiffs have failed to plead an actionable APA claim, *see id.* at 1268-71.

Second, Plaintiffs have not shown that they have even an arguable right to the relief they seek, much less that their "right to relief is 'indisputable.'" *Salmona*, 810 F.3d at 811, quoting *Kerr*, 426 U.S. at 403.  Plaintiffs seek unspecified information about "security and other potential [and unspecified] risks" posed by individual refugees who have been and will be resettled in Alabama, together with the Federal Government's "entire file" on each such refugee and certifications by senior federal officials that each of these refugees

20

"pose[s] no security risk."  Compl. at 14 (Request for Relief, ¶ B(1)-(3)).  As discussed *infra*, § B, the Refugee Act does not entitle Plaintiffs to any such information, documentation, or certifications.  Lacking an "indisputable" right to the relief they demand, Plaintiffs have not satisfied the exacting requirements for an award of mandamus.  *Salmona*, 810 F.3d at 812.[4]

For these reasons, none of the statutes on which Plaintiffs rely provides a legal basis to compel consultation, and thus, the case should be dismissed.

### B.   Section 1522(a)(2)(A) Does Not Require the Federal Government To Provide Plaintiffs The Relief They Seek.

This case should be dismissed for the additional reason that, even if Plaintiffs had a cause of action to enforce the consultation requirements of the Refugee Act, § 1522(a)(2)(A) does not require the Federal Government to provide Plaintiffs with any of the relief requested in the Complaint.  The Complaint's Prayer for Relief states that Plaintiffs want unspecified, but "sufficient," information about each individual refugee who has been resettled or will be resettled in Alabama so that the State may "assess security and other potential [and

---

[4] As noted above, Plaintiffs also demand that the State be allowed "a meaningful role and input into the process of resettlement" of refugees in Alabama.  Compl. at 14 (Request for Relief ¶ B(4)).  Such a vaguely worded request cannot supply the predicate for mandamus relief, under which the duty to be enforced must be a "specific, ministerial act . . . so plainly prescribed as to be free from doubt."  *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997); *see Gilbert Equipment Co., Inc. v. Higgins*, 709 F. Supp. 1071, 1089 (S.D. Ala. 1989).  In any event, to the extent that Plaintiffs mean that Alabama should be allowed to play a role in determining which individual refugees should and should not be resettled there, the Refugee Act grants the State no such right.  *See infra* at 23-24.

unspecified] risks posed by [them]" and "adequately plan for the[ir] arrival . . . in regard to security and requests for social services and public assistance."  Compl. at 14 (Request for Relief ¶ B(1)).  According to Plaintiffs, "sufficient information" means at least "the federal government's entire file on each refugee," including, among other things, security information and medical history.  *Id.* (Request for Relief ¶ B(2)).  Plaintiffs also demand "a certification by the Secretary of State," or another designated official, that individual refugees "pose no security risk."  *Id.* (Request for Relief ¶ B(3)).  Finally, Plaintiffs seek "a meaningful role and input into the process of resettlement of [] refugees."  *Id.* (Request for Relief ¶ B(4)). Although Plaintiffs do not explain what this vague request seeks, it appears Plaintiffs want to play a role in determining which individual refugees should and should not be resettled in Alabama based on the State's assessment of their security risk, medical history, or other grounds.  *See id.* at 9, 14.  Section 1522(a)(2)(A), however, does not require the Federal Government to provide Plaintiffs any of these things.

First, nothing in § 1522(a)(2)(A) requires the Federal Government to provide Plaintiffs with particularized information about individual refugees, much less the Federal Government's "entire file" on each refugee, before refugees may be resettled in Alabama.  Nor does § 1522(a)(2)(A) require the Federal Government to certify to States that particular refugees (or refugees in general) pose no security risk.  Section 1522(a)(2)(A) only instructs the Federal Government to consult

22

periodically with State and local governments about "the sponsorship process and the intended distribution of refugees among the State and localities."  The particularized information about individual refugees and certification regarding security risk that Plaintiffs seek plainly do not fall within the scope of the statute's directive to consult about the "sponsorship process" and the "distribution of refugees."  That should end the inquiry.  *See Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 488 (11th Cir. 2015) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.").

That said, the legislative history also confirms that § 1522(a)(2)(A) does not entitle Plaintiffs to this information.  The House Report on the Refugee Assistance Extension Act of 1986, Pub. L. No. 99-605, describes the statute as requiring consultation "on the sponsorship and placement process," and explains that consultation is intended to "enhance [] cooperation and communication . . . regarding placement strategies and decisionmaking."  H.R. Rep. No. 99-132 at 18-19.  Nothing in the legislative history suggests that the consultation provision requires the Federal Government to provide States with medical or security information on individual refugees or "the federal government's entire file on each refugee" before they are resettled.  Compl. at 14 (Request for Relief ¶ B(2)).

Second, the consultation required by § 1522(a)(2)(A) does not contemplate that a State will play a "role" or have "input" in determining  which individual refugees may be resettled there based on its assessment of their security risk,

23

medical history, or any other grounds. The legislative history makes clear that the consultation provision is "not intended to give States and localities any veto power over refugee placement decisions." H.R. Rep. No. 99-132 at 19. This understanding of § 1522(a)(2)(A) is also consistent with our constitutional structure, which allocates to the Federal Government the exclusive authority to regulate the admission, naturalization, and residence of aliens and prohibits States from imposing conditions on the admission or residence of aliens that Congress has not authorized. *See Toll*, 458 U.S. at 10; *see also Graham v. Richardson*, 403 U.S. 365, 378 (1971) ("aliens lawfully within this country have a right to enter and abide in any State in the Union"); *Truax v. Raich*, 239 U.S. 33, 39 (1915).

Because § 1522(a)(2)(A) does not require the Federal Government to provide Plaintiffs with any of the relief requested in the Complaint, Plaintiffs have failed to state a claim upon which relief can be granted.

## CONCLUSION

This case should be dismissed for failure to state a claim upon which relief can be granted.

Dated: March 8, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

JOYCE WHITE VANCE
United States Attorney

JOSEPH H. HUNT
Director

SHEILA M. LIEBER
Deputy Director

ANTHONY J. COPPOLINO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel


  */s/ Michelle R. Bennett*
MICHELLE R. BENNETT
STUART J. ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C.  20530
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

_/s/ Michelle R. Bennett_
MICHELLE R. BENNETT
