FILED

2016 Mar-24  PM 05:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00029-JEO |
| | ) | |
| | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## STATE OF ALABAMA'S OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      The Court may allow Alabama's case to proceed under the Refugee Act, the Administrative Procedure Act, or the Mandamus Act. . . . . . . . . . . .1

A. Alabama may sue to enforce its consultation rights under the Refugee Act of 1980. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

i.      Alabama is suing to enforce consultation rights created by the Refugee Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ii.     The statutory structure of the Refugee Act supports the conclusion that the text of § 1522(a)(2)(A) reflects congressional intent to create an implied right of action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

iii.    The legislative history evidences an intent to allow States judicial recourse when necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

The 1980 Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

The 1982 Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

The 1986 Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

B. In the alternative, the Court may allow Alabama's case to proceed under the Administrative Procedure Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

i.      Courts are empowered to review an agency's "failure to act" such as the failure to consult here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

ii.     Alabama's "failure to consult" claim is a proper "failure to act" claim under the APA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

C. If the Court finds there is no other adequate remedy available to Alabama, the case may proceed under the Mandamus Act. . . . . . . . . . . . . . . . . . . . . .15

i

i.    Mandamus relief is appropriate when there is no other adequate remedy and the defendant owes a clear duty to the plaintiff. . . . . . . . . . . . . . . .16

ii.   Alabama's alternative request for mandamus relief assumes there is no other adequate remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

iii.  The government owes a clear consultation duty to Alabama, meaning mandamus relief is appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

II.   Alabama has stated a claim upon which relief can be granted. . . . . . . . 18

A. The State's consultation rights and the government's consultation obligations involve mixed questions of fact and law warranting discovery 18

B. An allegedly infirm request for relief is not grounds for dismissal. . . . . . .20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

# TABLE OF AUTHORITIES

## Cases

*Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1294-95 (11th Cir. 2015)...... 2, 6, 8

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).................................................2, 3

*Burton v. State Farm Mut. Auto. Ins. Co.*, 335 F.2d 317, 320 (5th Cir. 1964)........21

*California Wilderness Coalition v. U.S. Dep't of Energy*, 631 F.3d 1072, 1085-90
(9th Cir. 2011)......................................................................................... 15, 20

*Cannon v. University of Chicago*, 441 U.S. 677, 693 n.14 (1979)...........................4

*Cort v. Ash*, 422 U.S. 66, 78 (1975)....................................................................2, 5

*Goldstein v. N. Jersey Trust Co.*, 39 F.R.D. 363, 370 (S.D.N.Y. 1966).................22

*Gregoire v. Rumsfeld*, 463 F. Supp. 2d 1209 (W.D. Wash. 2006) ...........................4

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259 (11th
Cir. 2011) ......................................................................................................16

*Love v. Delta Air Lines*, 310 F.3d 1347, 1352-53 (11th Cir. 2002)................. 2, 4, 8

*Lower Brule Sioux Tribe v. Deer*, 911 F. Supp. 395, 402 (D.S.D. 1995)................18

*Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 62 (2004) ...........14

*Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection*, 550
F.3d 1121, 1132 n.11 (Fed. Cir. 2008) ......................................................15

*United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016) ..............................16

*Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754 (1981)............................4

*Winnebago Tribe v. Babbitt*, 915 F. Supp. 157, 167-68 (D.S.D. 1996) .................18

## Statutes

§ 1 of the Davis-Bacon Act.........................................................................................4

28 U.S.C. § 1361 ......................................................................................................16

32 U.S.C. § 104 ..........................................................................................................5

42 U.S.C. § 15483(a)(5)(B)(i).....................................................................................4

42 U.S.C. § 2000d–1 ...................................................................................................4

49 U.S.C. § 41705(c) ..................................................................................................4

5 U.S.C. § 551 ...........................................................................................................13

5 U.S.C. § 701(b)(2)...................................................................................................13

5 U.S.C. § 702 ...........................................................................................................13

5 U.S.C. § 706(1) .......................................................................................................14

8 U.S.C. § 1522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Refugee Act of 1980, Pub. L. No. 96–212, § 412(a)(2), 94 Stat. 102 ..................... 9

Refugee Assistance Amendments of 1982, Pub. L. No. 97–363, §§ 3(a)(3) & 4(a)(2), 96 Stat. 1734 ........................................................................... 10

Refugee Assistance Extension Act of 1986, Pub. L. No. 99–605, § 4, 100 Stat. 3449............................................................................................................. 11

## Other Authorities

H.R. Rep. No. 99-132 (1985)........................................................................ 11, 12

S. Rep. No. 96-256 (1979) ................................................................................. 9

S. Rep. No. 97-638 (1982) ............................................................................... 10

## Rules

Fed. R. Civ. P. 54(c)................................................................................ 20, 21, 22

## Treatises

Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2664 & nn.7-8. (3d ed.)................. 21

The State of Alabama and the other plaintiffs oppose the motion to dismiss filed by the government, and show the Court as follows:

## INTRODUCTION

Alabama asks this Court to enforce its right to be consulted regarding the placement of refugees within its borders before those refugees are placed there, a right it has by virtue of the Refugee Act of 1980, as amended. Alabama alleges that the federal government has violated that right.

The government does not (because it cannot) argue in its motion to dismiss that it is consulting with Alabama as required by law. Instead, the government asserts that this Court has no role in declaring the State's rights, and it contends that dismissal is warranted because, in its view, Alabama's request for relief is too broad. As a matter of law, the government is incorrect. Its motion, therefore, should be denied.[1]

## ARGUMENT

### I. The Court may allow Alabama's case to proceed under the Refugee Act, the Administrative Procedure Act, or the Mandamus Act.

Whether under the Refugee Act, the Administrative Procedure Act, or the Mandamus Act, Alabama's claims are due to proceed.

---

[1] As stated in the complaint, Alabama's Medicaid Agency directly oversees the medical assistance component of the refugee resettlement program within the State. Compl. ¶ 25. Certain components of the program are overseen by Catholic Social Services of the Greater Mobile Area. *Id.* at 5 n.1. Alabama has not relinquished its consultation rights, and brings this suit in order to seek judicial enforcement of those rights as to the federal government.

### A. Alabama may sue to enforce its consultation rights under the Refugee Act of 1980.[2]

Contrary to the government's assertion, Alabama has a "private right of action" under the Refugee Act. The Eleventh Circuit has set forth a three-part analysis for whether a right of action exists, which looks to the text, structure, and legislative history of the statute. *See Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1294-95 (11th Cir. 2015) (citing *Love v. Delta Air Lines*, 310 F.3d 1347, 1352-53 (11th Cir. 2002)).[3]

### i. Alabama is suing to enforce consultation rights created by the Refugee Act.

The first element of the test is whether the statute contains "rights-creating" language. *PCI*, 801 F.3d at 1295. Section 1522(a)(2)(A) provides that the Director of ORR and the State Department and PRM "shall consult regularly (not less often

---

[2] Because this is true, the government is incorrect to say that Alabama may not seek declaratory and injunctive relief under the Declaratory Judgment Act.

Alabama also notes that the district court's opinion denying Texas' request for a preliminary injunction in a case involving the refugee resettlement program, filed in this case by the government as doc. 7-3, is distinguishable. The district court relied on the government's briefing in that case and did not have the benefit of the arguments and authorities that Alabama includes in this brief.

[3] These cases interpret *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) and *Cort v. Ash*, 422 U.S. 66, 78 (1975). In *Cort*, the Supreme Court outlined four factors: "**First**, is the plaintiff one of the class for whose especial benefit the statute was enacted, . . . that is, does the statute create a federal right in favor of the plaintiff? **Second**, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? **Third**, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? **And finally**, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" 422 U.S. at 78 (emphasis added; citations and internal quote marks omitted). In *Sandoval*, the Court explained that legislative intent is the touchstone. 532 U.S. at 286.

than quarterly) with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities before their placement in those States and localities." That language clearly gives rise to an expectation and entitlement, in the State, to **regular and advance consultation** from the government regarding the refugee program.

Unlike the provision in *PCI* where the statute's focus was on State laws, here, § 1522(a)(2)(A)'s focus is on "the [S]tates themselves," meaning the statute "identifi[es] a class of persons or entities protected under the statute" – here, the States – and therefore meets the rights-creating-language element. 801 F.3d at 1297. The government ignores this fact, and contends that the statute is merely a directive or command to a federal agency.

The government is incorrect, as the plain language of the statute, as compared to the language of the statutes in its cited cases, demonstrates. Section 1522(a)(2)(A) is not simply a directive for the federal government to go forth and enforce the Refugee Act; rather, it is a provision that creates in States a right to regular and advance consultation and then directs the federal government to respect and give effect to that right. In contrast, the statutes in the government's cited cases did not create, recognize, or refer with any specificity to the rights or holders of those rights. *Sandoval*, 532 U.S. at 288-89 (relevant portion of 42 U.S.C. § 2000d–

3

1 stated merely that each federal agency was "authorized and directed to effectuate the provisions" of another section); *Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) (per curiam) (42 U.S.C. § 15483(a)(5)(B)(i) stated that the State's chief election official and motor vehicle official "shall enter into an agreement . . . to verify the accuracy of the information provided on applications for voter registration."); *Love*, 310 F.3d at 1354 (relevant portion of 49 U.S.C. § 41705(c) stated that Department of Transportation "shall investigate" complaints of violations of another section, publish related data, and review complaints received by air carriers and report the results to Congress).[4]

The government's cited cases do not involve analogous circumstances to those here – where the State is suing the federal government to enforce statutory rights the government owes it under federal law. In contrast, in *Gregoire v. Rumsfeld*, 463 F. Supp. 2d 1209 (W.D. Wash. 2006), a situation more similar to this one, the district court rightly rejected the government's argument that the State could not sue to enforce its rights against it. In *Gregoire*, the Governor of

---

[4] While the statute in *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754 (1981), § 1 of the Davis-Bacon Act "require[d] that certain stipulations be placed in federal construction contracts for the benefit of mechanics and laborers . . . it [did] not confer rights directly on those individuals" because it was "simply 'phrased as a directive to federal agencies engaged in the disbursement of public funds.'" *Id.* at 772 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 693 n.14 (1979)). Alabama's case is distinguishable. Section 1522(a)(2)(A) gives rise to a direct right, in the State, vis-à-vis the federal government, to be consulted by it. The State is not a private plaintiff asserting against a federal contractor, under the Davis-Bacon Act, an entitlement to back wages on a contract that has been administratively determined *not* to call for Davis-Bacon work, as was the case in *Coutu*. Here, the State, a public plaintiff, is seeking to enforce its clear consultation rights directly against the federal officials and agencies required to consult with it under § 1522(a)(2)(A).

4

Washington sued the Secretary of Defense, seeking to permanently enjoin the Secretary from implementing certain final recommendations made pursuant to the base realignment and closure process. The Governor asserted that implementation of the recommendations would violate 32 U.S.C. § 104, which provides that each State "may fix the location of the units and headquarters of its National Guard" and that "no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor."

The district court analyzed the Governor's claim under the *Cort* factors, finding that (1) the Governor was clearly a member of the class for whose especial benefit the statute was enacted, (2) the text and legislative history of the statute indicated that Congress did intend to allow a Governor to challenge actions that violate her right to grant or withhold her consent under it, (3) it was consistent with the underlying purpose of the legislative scheme – to maintain the careful balance between state and federal control of the National Guard – to imply such a remedy for the Governor, and (4) the claim was not a claim which is traditionally delegated to state law, there is no state law remedy, and so a federal remedy was appropriate. *Id.* at 1223-24. Likewise, Alabama has the right to ask this Court to enforce its consultation rights as against the federal government.

**ii.  The statutory structure of the Refugee Act supports the conclusion that the text of § 1522(a)(2)(A) reflects congressional intent to create an implied right of action.**

The second element of the test is whether the statutory structure supports the conclusion that the text reflects congressional intent to create an implied right of action. *PCI*, 801 F.3d at 1295. It is unmistakably clear from a review of § 1522 that the refugee resettlement program is a federal-state partnership.

For example, in addition to (a)(2)(A)'s federal-state-partnership language:

- "It is the intent of Congress that in providing refugee assistance under this section . . . local voluntary agency activities should be conducted in close cooperation and advance consultation with State and local governments." (a)(1)(B)(iii).

- "The Director shall develop and implement, in consultation with representatives of voluntary agencies and State and local governments, policies and strategies for the placement and resettlement of refugees within the United States." (a)(2)(B).

- "Such policies and strategies, to the extent practicable and except under such unusual circumstances as the Director may recognize, shall . . . provide for a mechanism whereby representatives of local affiliates of voluntary agencies regularly (not less often than quarterly) meet with representatives of State and local governments to plan and coordinate in advance of their arrival the appropriate placement of refugees among the various States and localities. . . ." (a)(2)(C)(ii).

- "With respect to the location of placement of refugees within a State, the Federal agency administering subsection (b)(1) of this section shall, consistent with such policies and strategies and to the maximum extent possible, take into account recommendations of the State." (a)(2)(D).

- "The Secretary shall . . . assure that State or local health officials at the resettlement destination within the United States of each refugee are promptly notified of the refugee's arrival and provided with all applicable medical records. . . ." (b)(4)(C).

This statutory framework setting forth a federal-state partnership in the resettlement of refugees is supportive of congressional intent that, should judicial enforcement become necessary in light of the federal government's failure to consult with the States as required by law, States may go to court to seek that judicial enforcement.[5]

The government attempts to obscure this glaring reality by referring to its broad authority to regulate immigration generally and asserting that Alabama's claims in this case seek to undermine that authority and invert the constitutional order. The government's obfuscation is not just hyperbole; it is a complete non sequitur. Alabama is not seeking to undermine the government's authority. Alabama simply seeks an order from this Court declaring the government's failure to consult with it and requiring the government to so consult as required by federal law. It was Congress, the federal body with the power to legislate on immigration matters (Government's Brief, doc. 7-1, 4), that decided the State has an expressed

---

[5] To the extent the government argues that § 1522(a)(2)(A) does not entitle the State to all of the relief it seeks in its complaint, the State notes that its complaint seeks relief under the Refugee Act of 1980, as amended. Some of the relief which Alabama seeks under the umbrella term "consultation" is further specifically required by various subsections of § 1522, as the bulleted example list above demonstrates.

right to be consulted regularly and in advance of placement of refugees. Alabama asks this Court to recognize and enforce that right – no more, no less.

Finally, one of the reasons courts sometimes decline to infer a right of action, that the statute provides some other "'discernible enforcement mechanism,'" is not present here. *PCI*, 801 F.3d at 1295 (quoting *Love*, 310 F.3d at 1353); *see also id.* at 1297 ("IGRA expressly prescribes other remedies applicable when a tribe conducts class III gaming without a tribal-state compact."). Either Alabama is able to seek redress from this Court, or the government is free to continue to violate its consultation rights with impunity. The statutory structure of the Refugee Act supports the conclusion that Congress intended for States to be able to enforce their consultation rights against the federal government.

### iii.  The legislative history evidences an intent to allow States judicial recourse when necessary.

The third and final element of the test is whether the "'legislative history and context within which a statute was passed'" supports the inference of the right to sue. *PCI*, 801 F.3d at 1295 (quoting *Love*, 310 F.3d at 1353). A review of the legislative history further puts the lie to the notion that the government may shut the States out of the refugee resettlement process consistent with congressional intent.

8

**The 1980 Act**

From the Refugee Act's beginning, Congress recognized that "[b]ecause refugees admitted to the United States are a result of a national policy decision and by federal action, the federal government clearly has a responsibility to assist States and local communities in resettling the refugees . . . until they are self-supporting and contributing members of their adopted communities." S. Rep. No. 96-256 at 10 (1979). The core of the program was cash assistance, "medical assistance according to each State's Medicaid program," and certain social services. *Id.* at 11.

To effectuate this federal-state partnership, the 1980 Act provided that the relevant federal officials "shall consult regularly with State and local governments and private nonprofit voluntary agencies concerning the sponsorship process and the intended distribution of refugees among the States and localities." Refugee Act of 1980, Pub. L. No. 96–212, § 412(a)(2), 94 Stat. 102.

**The 1982 Amendment**

In 1982, Congress amended the Act to provide that "local voluntary agency activities should be conducted in close cooperation and advance consultation with State and local governments" and that the federal government "shall develop and implement, in consultation with representatives of voluntary agencies and State and local governments, policies and strategies for the placement and resettlement

9

of refugees within the United States." Refugee Assistance Amendments of 1982, Pub. L. No. 97–363, §§ 3(a)(3) & 4(a)(2), 96 Stat. 1734. Congress thought the amendment necessary because there was a concern voiced by Members "that refugee policies be promulgated with full consultation with State and local governments and voluntary agencies charged with refugee resettlement." S. Rep. No. 97-638 at 2 (1982).

Congress noted that "despite the specific requirements" in the 1980 Act that the relevant federal officials "'consult regularly'" with States and localities, "much remains to be accomplished in this area." *Id.* at 9. The National Governors Association and other groups representing local governments "sharply criticized the federal government for its failure to consult with them on refugee placement decisions." *Id.* Congress "remain[ed] disturbed" that the 1980 Act's consultation requirements were not being followed. *Id.*

### The 1986 Amendment

While language beefing up the specific consultation provision in § 1522(a)(2)(A) would not be passed until 1986, Congress noted in 1982 that such language was important. Congress stated that while the proposed language referred (as the statute now does) to "quarterly meetings," it was expected that "such meetings be held more frequently, as needed." *Id.* Congress recognized that the consultation requirements of the 1980 Act "have not been properly implemented"

10

and expressed its "clear[]" "intent" that the consultation meetings be "meaningful and productive" and address the concerns of State and local officials. *Id.*

As noted in the complaint, in 1986 Congress passed the more stringent language regarding the regular consultation requirement to provide that the consultation shall take place "not less often than quarterly" and to make the consultation requirement an advance one – "before [the refugees'] placement in those States and localities." Refugee Assistance Extension Act of 1986, Pub. L. No. 99–605, § 4, 100 Stat. 3449. Thus, Congress was saying loudly and clearly: "We really mean it when we say States have consultation rights."

Congress continued to chronicle the federal government's failure to recognize and respect those rights. The House Report for the 1986 amendment noted that "State and local governments have consistently complained that their interests and concerns are not adequately considered by [voluntary resettlement agencies] when these allocations are made. To insure greater coordination in this process, the Refugee Act was amended in 1982 to require the ORR Director to consult regularly with State and local governments and with [voluntary resettlement agencies] 'concerning the sponsorship process and the intended distribution of refugees.'" H.R. Rep. No. 99-132 at 18 (1985). The Report went on to note that ORR failed to conduct the required consultations, despite recognizing that they would be beneficial to the program. *Id.*; *see also* Compl. ¶ 22 (describing

11

1986 amendment and citing local officials' concern that the federal government was not actively consulting with States and localities as required).

Congress then turned to the enhanced consultation requirements in the 1986 amendment and emphasized that the regular consultation be conducted by both the State Department and ORR "**at least on a quarterly basis** and **prior to refugee placements** in States and localities." *Id.* at 19 (emphasis added). The timing requirement was "**intended to ensure that governmental entities will be notified and consulted before the placement** of large numbers of refugees in any particular State or locality. It is also anticipated that this requirement will **enhance the co-operation and communication** between the Federal Government, State and local governments and the [voluntary resettlement agencies] **regarding placement strategies** and **decisionmaking**." *Id.* (emphasis added).

It was at this point in the Report where it was noted that the requirements were not intended to provide States with a unilateral "veto power," but the rest of the sentence makes clear that States have a vital role alongside the federal government: "The Committee emphasizes that these requirements are not intended to give States and localities any veto power over refugee placement decisions, but **rather to ensure their input into the process and to improve their resettlement planning capacity**." *Id.* (emphasis added).

12

In light of this legislative history, the government appears to have no basis to claim that "the consultation required by § 1522(a)(2)(A) does not contemplate that a State will play a 'role' or have 'input' in determining which individual refugees may be resettled there based on its assessment of their security risk, medical history, or any other grounds." Doc. 7-1 at 23-24. In any event, the Court will entertain argument on that issue when it determines the merits. At this stage, it is enough for the legislative history to show, as it clearly does, that Congress' intent for States to have meaningful consultation rights could not have been more emphatic.

### B. In the alternative, the Court may allow Alabama's case to proceed under the Administrative Procedure Act.

If the Court determines that Alabama may not sue under the Refugee Act, it may allow the case to proceed under the APA instead.

### i. Courts are empowered to review an agency's "failure to act" such as the failure to consult here.

The APA expressly provides a cause of action to a "person suffering legal wrong because of agency action." 5 U.S.C. § 702. "Agency action" includes an agency's failure to act. *See* 5 U.S.C. § 701(b)(2) ("agency action" has the meaning given in 5 U.S.C. § 551); *id.* § 551(13) ("'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). The statute specifically provides that the remedy for an

agency's failure to act is an order compelling action, as Alabama has requested here. *See* 5 U.S.C. § 706(1) (the "reviewing court shall . . . compel agency action unlawfully withheld . . . ."). Thus, the APA provides a legal basis for compelling the government to comply with its obligation to consult with Alabama under § 1522(a)(2)(A).

### ii. Alabama's "failure to consult" claim is a proper "failure to act" claim under the APA.

The government attempts to avoid this Court's scrutiny by arguing that the consultation required by § 1522(a)(2)(A) is not "agency action" within the meaning of § 702 because, the government says, that consultation is not a rule, order, license, sanction, or relief, and "failure to act," is "properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 62 (2004) (emphasis in original).

But *SUWA* clarified that a "failure to act" need only be "a discrete action" that is "legally required," such as the failure to "take some decision by a statutory deadline." *Id.* at 63. Here, the government has failed to consult with Alabama regarding the placement of refugees by the statutory deadline—prior to those refugees' placement within its borders. Each time the government fails to so consult and make the required disclosures prior to the placement of refugees within the State is a failure to take a discrete action that is legally required. That counts as

14

a "failure to act" under the APA that this Court may review and remedy. *See Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection*, 550 F.3d 1121, 1132 n.11 (Fed. Cir. 2008) ("allegation that [an] agency has failed to meet its duty to consult" was held to constitute "a proper 'failure to act' claim under the APA") (citing *SUWA*); *California Wilderness Coalition v. U.S. Dep't of Energy*, 631 F.3d 1072, 1085-90 (9th Cir. 2011) (reviewing under the APA "whether the [Department of Energy] . . . consulted with the affected States as mandated by Congress" and rejecting agency's position that "because Congress did not define what it meant by 'consultation,' [the court] must defer to the [agency's] interpretation of the term").

Here, unlike the agency actions challenged in *SUWA*, the consultation requirement is a "categorical imperative," which is both discrete and legally required. The Court may therefore allow the State's case to proceed under the APA.

### C. If the Court finds there is no other adequate remedy available to Alabama, the case may proceed under the Mandamus Act.

If the Court determines there is no other adequate remedy, Alabama's case is due to proceed under the Mandamus Act.

### i. Mandamus relief is appropriate when there is no other adequate remedy and the defendant owes a clear duty to the plaintiff.

The Mandamus Act gives "the district courts . . . original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is appropriate when there is no other adequate remedy and the defendant has a "clear duty to act." *United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016). Because the defendants have such a duty to Alabama, if the Court finds there is no other adequate remedy, mandamus relief is appropriate, meaning the motion to dismiss should be denied.

### ii. Alabama's alternative request for mandamus relief assumes there is no other adequate remedy.

Alabama seeks mandamus relief only if "there is no other adequate remedy available." Compl. ¶ 48. The government's self-contradictory argument that mandamus is foreclosed by the availability of mandatory injunctive relief under the APA (doc. 7-1 at 20), while simultaneously arguing that injunctive relief is unavailable under the APA (*id.* at 15-18), is baseless. That assertion is not logical and is not supported by *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259 (11th Cir. 2011).

In *Hollywood*, judicial review of the agency action was available, but the plaintiffs lacked standing to seek it. 641 F.3d at 1268-71. Here, in contrast, the

16

government does not argue that Alabama lacks standing to bring an APA claim, but instead argues that no claim under the APA is available at all because the "consultation contemplated by [the Refugee Act] is not 'agency action'" within the meaning of the APA. Doc. 7-1 at 15. In other words, the government argues that relief is categorically unavailable under the APA. If it is correct about that, then the prospect of relief under the APA obviously does not foreclose mandamus relief, because there is no such prospect.

### iii. The government owes a clear consultation duty to Alabama, meaning mandamus relief is appropriate.

Under the clear and unequivocal plain language of § 1522, the government is required to provide regular and advance consultation to Alabama. The government does not argue otherwise.

Alabama alleges that the government has failed to provide that statutorily required regular and advance consultation, and that allegation must be taken as true for purposes of a motion to dismiss. *See* Compl. ¶ 2 ("The Refugee Act of 1980 requires the federal government to consult with the State regarding the placement of refugees before those refugees are placed within its borders. That consultation has not occurred."); *id.* ¶¶ 9-16 (various departments and individuals have "consultation obligations to Alabama under the Refugee Act of 1980, and ha[ve] failed to fulfill those obligations"); *id.* ¶ 37 (the defendants have "fail[ed] and

17

refus[ed] to consult adequately with the State of Alabama on a regular basis and in advance regarding placement of refugees within the State").

An agency's failure to engage in meaningful, required consultation is an appropriate basis for a writ of mandamus where administrative proceedings are unavailable (as the government contends is the case here). *See Winnebago Tribe v. Babbitt*, 915 F. Supp. 157, 167-68 (D.S.D. 1996) (issuing a writ of mandamus requiring federal agency "to engage in meaningful prior consultation pursuant to [agency] policies and guidelines"); *Lower Brule Sioux Tribe v. Deer*, 911 F. Supp. 395, 402 (D.S.D. 1995) (same).

## II.     Alabama has stated a claim upon which relief can be granted.

The government asserts that the Court may dismiss the case because, in its view, the Refugee Act does not require it to provide the State with any of the relief requested in the complaint. That is incorrect. The State's entitlement to the relief requested is a mixed question of fact and law warranting discovery; moreover, as a matter of law, an allegedly infirm request for relief is not grounds for dismissal.

### A. The State's consultation rights and the government's consultation obligations involve mixed questions of fact and law warranting discovery.

The consultation Alabama is entitled to is a legal question based upon a statutory mandate, which is why the State has presented the question to this Court for resolution. But resolution of that question will be part of the determination of

18

the case on the merits, and development of a full factual record is necessary to assist the Court in that undertaking.

For example, in the proceeding brought by Texas to enforce its consultation rights, **the government appeared to concede that ORR** – one of the entities as to which States have consultation rights under § 1522(a)(2)(A) (*see* Compl. at 5 n.1) – **in fact does not consult with the States as required by that law**. *See* Government's Opp. to Amend. Mot. for Prelim. Inj., doc. 46, 17-18 & n.9, Case No. 3:15-cv-03851-N (N.D. Tex.) (asserting that PRM undertakes certain actions allegedly amounting to consultation, but failing to allege that ORR does so). Alabama is entitled to discovery on the actions PRM has allegedly undertaken, and on whether ORR has attempted to consult at all.[6]

Also, in the Texas case, the government cited to "longstanding administrative practice" and institutional "memory" in support of its arguments as to what is the scope of the States' consultation rights. *Id.* at 16 n.7; *see also* Government's Opp. to Mot. for TRO, doc. 5, 7-8. The government asserted that as a matter of practice it has never provided States with person-specific information prior to arrival, and States have never requested such information. *Id.*

Alabama is entitled to probe, investigate, and test those assertions, and come to its own conclusions about whether it is true that the government has never

---

[6] In its motion in this case, the government does not assert that any federal agencies have consulted with Alabama.

consulted with States as it is requesting and if not, why not. It is Alabama's understanding that the government provides person-specific information in advance to voluntary resettlement agencies. Why can't similar information be provided to the States?  It is the States which, under our constitutional structure, are charged with securing the health, safety, and welfare of those within their borders, including refugees residing there. *See* Compl. ¶ 24.[7]

### B. An allegedly infirm request for relief is not grounds for dismissal.

Federal Rule of Civil Procedure 54(c) provides that every final judgment (other than a default judgment) "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

Alabama of course believes that its request for relief is appropriate. Alabama asserts that it is entitled to all of the relief sought in its complaint, including the items specified in paragraph B of the Request for Relief. *See, e.g., California Wilderness*, 631 F.3d at 1089 (concluding that the government's failure to provide affected States with relevant material in advance "interfered with their ability to consult" with the agency). The State also seeks other relief, such as a declaration that the government has breached its consultation obligations, a permanent

---

[7] It also is Alabama's understanding that voluntary resettlement agencies have a form of veto, able to grant or deny consent to the federal government's request that they accept the individual refugees for whom informational disclosures are made on a case by case basis. That fact, too, warrants searching discovery and investigation.

injunction compelling the government to comply, and "such other and further relief to which" it is entitled. Compl., 13-14.

In any event, dismissal cannot turn on whether Alabama's request for relief is over- or under-inclusive. Even assuming *arguendo* the government is correct that Alabama's request for relief is too broad (a contention the State obviously disagrees with), Rule 54(c) means that a request for relief that fails to demand the appropriate relief is not grounds for dismissal.

"Inasmuch as the demand for relief does not constitute part of the pleader's claim for relief, a failure to demand the appropriate relief will not result in a dismissal. The question is not whether plaintiff has asked for the proper remedy but whether plaintiff is entitled to any remedy." Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2664 & nn.7-8. (3d ed.) (collecting cases); *see also Burton v. State Farm Mut. Auto. Ins. Co.*, 335 F.2d 317, 320 (5th Cir. 1964) ("As we have many times said, except in the case of a default judgment, the Court is bound to grant whatever relief the facts show is necessary or appropriate. . . . To grant summary judgment dismissing the whole main case could be sustained, not by showing that the relief prayed for was not available, but rather that there was no genuine issue of fact on which any kind or type of relief, complete, final, contingent or interim, could be granted.") (citing Fed. R. Civ. P. 54(c)); *Goldstein v. N. Jersey Trust Co.*,

39 F.R.D. 363, 370 (S.D.N.Y. 1966) ("the striking of a portion of the demand for relief would be but an empty gesture.") (citing same).

Because Alabama alleges that the government has violated its consultation rights under the Refugee Act, its case may proceed to a determination of the merits. If Alabama prevails, the Court, pursuant to Rule 54(c), will award Alabama the relief to which it is entitled.

## CONCLUSION

For these reasons, the government's motion is due to be denied.


DATED: March 24, 2016

Respectfully submitted,

s/ Robert K. Spotswood

| | |
|---|---|
| David B. Byrne, Jr. | Robert K. Spotswood |
| *Chief Legal Advisor* | Joshua K. Payne |
| Carrie Ellis McCollum | *Deputy Attorneys General* |
| *Deputy Legal Advisor* | SPOTSWOOD SANSOM & |
| OFFICE OF GOVERNOR ROBERT | SANSBURY LLC |
| BENTLEY | One Federal Place |
| Alabama State Capitol | 1819 Fifth Avenue North, Suite 1050 |
| 600 Dexter Avenue, Suite NB-05 | Birmingham, Alabama 35203 |
| Montgomery, Alabama 36130 | TEL: (205) 986-3620 |
| TEL: (334) 242-7120 | FAX: (205) 986-3639 |
| FAX: (334) 242-2335 | rks@spotswoodllc.com |
| pam.chesnutt@governor.alabama.gov | jpayne@spotswoodllc.com |
| carrie.mccollum@governor.alabama.gov | |

*Attorneys for the Plaintiffs*

22

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on March 24, 2016, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel of record.

                       s/ Joshua K. Payne
                       OF COUNSEL