# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |
|---|---|
| _____ ) | |
| STATE OF ALABAMA, *et al.*,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | Civil Action No. |
| v.  ) | 2:16-cv-00029-JEO |
| ) | |
| UNITED STATES OF AMERICA,  ) | |
| *et al.*,  ) | **OPPOSED MOTION** |
| ) | |
| Defendants.  ) | |
| _____ ) | |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Dated:  April 12, 2016

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
  General
JOYCE WHITE VANCE
United States Attorney
JOSEPH H. HUNT
Director
SHEILA M. LIEBER
Deputy Director
ANTHONY J. COPPOLINO
Deputy Director
JAMES J. GILLIGAN
Special Litigation Counsel
MICHELLE R. BENNETT
Trial Attorney
STUART J. ROBINSON
Trial Attorney

United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Room 6102
Washington, D.C.  20530
Tel:   (202) 514-3358
Fax:  (202) 616-8470
Email: james.gilligan@usdoj.gov

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 1

   A.  Plaintiffs Have No Cause of Action ............................................. 1

      1.  The Refugee Act ............................................................. 1

      2.  The Administrative Procedure Act ....................................... 6

      3.  The Mandamus Act .......................................................... 8

   B.  Plaintiffs Have Not Stated a Failure to Comply With the Consultation Requirements of the Refugee Act .............................. 9

CONCLUSION ................................................................................ 10

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**CASES**</u>

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ........................................................ 10

*Alabama v. PCI Gaming Auth.*,
    801 F.3d 1278 (11th Cir. 2015) ...................................................... 5, 6

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ........................................................................ 2, 3

*Allen v. State Bd. of Elections*,
    393 U.S. 544 (1969) ............................................................................ 3

*Armstrong v. Exceptional Child Ctr., Inc.*,
    135 S. Ct. 1378 (2015) ........................................................................ 3

*Arrington v. Helms*,
    438 F.3d 1336 (11th Cir. 2006) ........................................................ 3, 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 9, 10

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
    631 F.3d 1072 (9th Cir. 2011) ............................................................. 8

*Cannon v. Univ. of Chi.*,
    441 U.S. 677 (1979) ........................................................................ 2, 3

*Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*,
    692 F.3d 1200 (11th Cir. 2012) ........................................................... 2

*Delancey v. City of Austin*,
    570 F.3d 590 (5th Cir. 2009) ............................................................... 4

*Deubert v. Gulf Fed. Sav. Bank*,
    820 F.2d 754 (5th Cir. 1987) ............................................................... 6

*Florida v. Seminole Tribe*,
    181 F.3d 1237 (11th Cir. 1999) ........................................................... 5

**Page(s)**

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002) ........................................................................... 2, 4

*Gregoire v. Rumsfeld*,
463 F. Supp. 2d 1209 (W.D. Wash. 2006) .......................................... 4

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*,
641 F.3d 1259 (11th Cir. 2011) ........................................................... 8

*Ishler v. Internal Revenue*,
237 F. App'x 394 (11th Cir. 2007) ...................................................... 1

*Love v. Delta Air Lines*,
310 F.3d 1347 (11th Cir. 2002) ................................................... 2, 5, 6

*Lower Brule Sioux Tribe v. Deer*,
911 F. Supp. 395 (D.S.D. 1995) .......................................................... 8

*Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*,
683 F.3d 1323 (11th Cir. 2012) ........................................................... 3

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................... 7

*Nw. Airlines v. Transp. Workers Union*,
451 U.S. 77 (1981) .............................................................................. 5

*Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*,
980 F.2d 1043 (5th Cir. 1993) ............................................................. 2

*Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*,
550 F.3d 1121 (Fed. Cir. 2008) ........................................................... 8

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979) ............................................................................. 5

*Transamerica Mortg. Advisors v. Lewis*,
444 U.S. 11 (1979) .............................................................................. 5

*United States v. Mitchell*,
445 U.S. 535 (1980) ............................................................................. 2

*United States v. Salmona*,
810 F.3d 806 (11th Cir. 2016) ............................................................. 8

iii

**Page(s)**

*United States v. S. Carolina,*
    840 F. Supp. 2d 898 (D.S.C. 2011) *modified in part*, 906 F. Supp. 2d
    463 (D.S.C. 2012) ................................................................................... 5

*Univs. Research Ass'n v. Coutu,*
    450 U.S. 754 (1981) ................................................................................. 3

*Winnebago Tribe v. Babbitt,*
    915 F. Supp. 157 (D.S.D. 1996) ............................................................. 8


**STATUTES**

5 U.S.C. § 551 ............................................................................................... 7

5 U.S.C. § 706 ...................................................................................... 6, 7, 8

8 U.S.C. § 1252 ............................................................................................. 5

8 U.S.C. § 1103 ............................................................................................. 5

8 U.S.C. § 1104 ............................................................................................. 5

42 U.S.C. § 1522 .................................................................................*passim*

42 U.S.C. § 1983 ........................................................................................... 4


**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 10

Fed. R. Civ. P. 54(c) .................................................................................... 9


**LEGISLATIVE MATERIALS**

H.R. Rep. No. 132, 99th Cong., 1st Sess. (1985) ............................. 4, 5, 6, 7

## INTRODUCTION

Plaintiffs' response to Defendants' motion to dismiss (Dkt. No. 19) ("Pls.' Opp'n") casts no doubt on the conclusion, already reached by one court, that Plaintiffs "ha[ve] no viable cause of action against the Federal [Government]" to compel consultation under the Refugee Act. *Texas Health & Human Servs. Comm'n v. United States*, Defs.' Mem. (Dkt. No. 7-1), Ex. 2, at 6. Plaintiffs urge the Court to skirt this threshold inquiry because the Act requires the Federal Government to consult with States in some manner and the Government has "not … argue[d] in its motion to dismiss that it is consulting with Alabama." Pls.' Opp'n at 1. Setting aside that such a fact-based merits argument could not be made in a motion to dismiss, the Court must reject Plaintiffs' invitation to fashion a cause of action and judicial remedy that Congress itself has not seen fit to provide.

## ARGUMENT

### A.   Plaintiffs Have No Cause of Action.

#### 1.   The Refugee Act

Plaintiffs concede that § 1522(a)(2)(A) does not contain an *express* provision creating a cause of action for States against the Federal Government and instead ask this Court to infer one. *See* Pls.' Opp'n at 2-13. That concession is fatal to Count I. The United States, its agencies, and its employees sued in an official capacity are immune from suit absent a waiver of sovereign immunity. *See Ishler v. IRS,* 237 Fed. Appx. 394, 397 (11th Cir. 2007). Such a waiver "cannot be

implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  "[B]ecause [§ 1522(a)(2)(A)] does not expressly waive sovereign immunity, no right of action against [the federal government] may be [inferred]" under the statute.  *Resident Council of Allen Parkway Vill. v. HUD*, 980 F.2d 1043, 1054 (5th Cir. 1993); *see Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1209-10 (11th Cir. 2012) ("The very notion of an *implied* cause of action against [a sovereign] is at war with the requirement that Congress must *expressly* abrogate the [sovereign's] immunity.").

Moreover, § 1522(a)(2)(A) does not create an implied right of action. Plaintiffs argue that failing to infer a right of action would leave them without any "redress," Pls.' Opp'n at 8, but "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). Rather, the issue is whether Congress "clear[ly] and unambiguous[ly]," *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002), intended "to create not just a private right but also a private remedy," *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

In discerning legislative intent, courts look "[f]irst and foremost" to the statutory text for "[r]ights-creating language."  *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002).  Courts also examine the statutory structure.  *Id*. at 1353.  "[I]f—and *only* if" those sources are not conclusive, courts "turn to the legislative history and context within which [the] statute was passed."  *Id*.  None of

2

these sources provides clear and unambiguous evidence that Congress intended to create a cause of action against the Federal Government under § 1522(a)(2)(A).

First, § 1522(a)(2)(A) lacks the rights-creating language necessary to imply a cause of action. The Supreme Court has found an implied cause of action where the statute evidences "an unmistakable focus on the benefited class." *Cannon*, 441 U.S. at 691; *see, e.g.*, *id*. at 681-82 ("No person . . . shall . . . be subjected to discrimination"); *Allen v. State Bd. of Elections*, 393 U.S. 544, 555 (1969) ("[N]o person shall be denied the right to vote"). In contrast, it has declined to do so where the statute is framed as "a command to a federal agency." *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772 (1981); *see Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1387 (2015) (the "Secretary shall approve"); *Alexander*, 532 U.S. at 288-89 ("Each Federal department . . . is . . . directed to effectuate"). Section 1522(a)(2)(A) fits into the latter category—it is a command to the Federal Government and does not unmistakably focus on States.

Plaintiffs contend that § 1522(a)(2)(A)'s reference to "States" is dispositive, Pls.' Opp'n at 3, but "[w]hen surveying a statute for rights-conferring language, … incantation of the word 'individual,'" or, as here, "State," "is not talismanic." *Martes v. CEO of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1328 (11th Cir. 2012). Rather, the statutory provision must be "singularly focused upon the individual protected," *id.* which § 1522(a)(2)(A) is not. For example, in *Arrington v. Helms*, 438 F.3d 1336 (11th Cir. 2006), the Eleventh Circuit refused to infer a cause of

3

action under a provision analogous to the one at issue here.  The statute provided in part that "the State shall distribute the amount [of child support] collected to the family."  *Id*. at 1341 n.8.  The court focused not on the statute's "refer[ences] to the individual recipient 'family'" but instead on the language "*the State shall*."  *Id*. at 1346.  The statute lacked rights-creating language because it spoke "only to the states, instructing them to distribute child support payments in a certain fashion; it [did] not speak directly to individual custodial parents."  *Id*.[1]  So, too, in *Delancey v. City of Austin*, 570 F.3d 590 (5th Cir. 2009), the court refused to infer a right of action where a statute directed the provision of services to displaced persons.  The court held that the statute is "directed at the 'head of any displacing agency' rather than at the individuals benefited," and "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights …."  *Id*. at 594.[2]  Section 1522(a)(2)(A) is such a statute.

Nor does the statutory structure aid Plaintiffs.  Where the structure evidences a comprehensive enforcement scheme, courts should not find rights of action in

---

[1] Cases, like *Arrington*, that examine whether a statute creates rights enforceable under 42 U.S.C. § 1983 are relevant to an implied-right-of-action analysis, because the rights-creating-language inquiry is the same in both contexts, although implied-right-of-action cases also require a showing of intent to create a private *remedy*.  *Gonzaga Univ.*, 536 U.S. at 283-85.

[2] Plaintiffs cite only one case in support of their position, *see* Pls.' Opp'n at 4 (citing *Gregoire v. Rumsfeld*, 463 F. Supp. 2d 1209 (W.D. Wash. 2006)), which is neither controlling nor persuasive.  The analysis is cursory, and the provision at issue distinguishable, as it explicitly empowered State governors "to consent or withhold [their] consent to changes" in the National Guard's structure by stating that "no change . . . may be made without the approval of a [State's] governor."  *Id.* at 1215, 1223.  Section 1522(a)(2)(A) contains no similar language, and its legislative history makes clear it is "not intended to give States and localities any veto power over refugee placement decisions."  H.R. Rep. No. 132, 99th Cong., 1st Sess., 19 (1985).

provisions that do not expressly provide for them. *See Nw. Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 93-94 (1981); *Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1248-49 (11th Cir. 1999). In particular, "that Congress has expressly provided private litigants with one right of action … powerfully suggests that [it] did not intend to provide other private rights of action." *Love*, 310 F.3d at 1357.

The Immigration and Nationality Act ("INA"), which the Refugee Act amended, includes "a comprehensive [federal] enforcement scheme." *Cf. United States v. S. Carolina*, 840 F. Supp. 2d 898, 910 (D.S.C. 2011), *modified in part*, 906 F. Supp. 2d 463 (D.S.C. 2012); *see* 8 U.S.C. §§ 1103-1104 (detailing broad duties of executive officials in enforcing the INA). Within this scheme, Congress expressly authorized certain rights of action for aliens, *e.g.*, 8 U.S.C. § 1252(b)(9), and could have drafted § 1522(a)(2)(A) to include a right of action for States had it so intended. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("[W]hen Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."); *accord Transam. Mtg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979). Because Congress did not do so, no such right should be found.[3]

---

[3] Plaintiffs' observation "that the refugee resettlement program is a federal-state partnership," Pls.' Opp'n at 6, does not alter this conclusion. It is true that § 1522 reflects a careful balance of federal and State interests, but allowing States to bring suit to block refugee placements on the ground that the Federal Government did not consult with them about concerns not specified in the statute, to be defined through protracted litigation, would upset that balance by impairing the Federal Government's ability to resettle refugees in times of crisis, and effectively provide the States veto power that Congress expressly intended to preclude. H.R. Rep. No. 99-132 at 19; *see Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1300 (11th Cir. 2015).

Although the statutory text and structure are conclusive, *see Love*, 310 F.3d at 1353, the legislative history, even if considered, would confirm that Congress did not intend to create a right of action under § 1522(a)(2)(A).  As Plaintiffs note, Pls.' Opp'n at 8-13, Congress repeatedly enhanced and elaborated on the Act's consultation requirements to address perceived shortcomings in the consultation process.  *See* H.R. Rep. No. 99-132 at 18-19.  In balancing the pertinent federal and State interests, Congress could have included a right of action under § 1522(a)(2)(A), but did not.  Its decision not to do so—along with its emphasis that the consultation requirements "are not intended to give States . . . any veto power over refugee placement decisions," *id.* at 19—weighs heavily against finding a right of action.  *See PCI Gaming Auth.*, 801 F.3d at 1300; *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 759 (5th Cir. 1987) (despite repeated amendments, "Congress has never included or even proposed … a private cause of action ….").[4]

## 2.    The Administrative Procedure Act

Plaintiffs' claim to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), must be dismissed because (i) consultation under § 1522(a)(2)(A) is not "agency action" as defined by the APA, (ii) consultation under § 1522(a)(2)(A) is not a "discrete" action, and (iii) the disclosures that Alabama seeks are not "legally

---

[4] Plaintiffs do not dispute that the Declaratory Judgment Act ("DJA") does not itself create a substantive cause of action; instead, they argue that the Refugee Act supplies the needed right of action.  Pls.' Opp'n at 2 n.2.  Because that is not the case, as discussed above, Plaintiffs cannot rely on the DJA, either, as a basis for relief.  *See Texas*, Defs.' Mem. Ex. 2, at 7.

required."  Defs.' Mem. at 15-18, citing *Norton v. S. Utah Wilderness All.*

*("SUWA")*, 542 U.S. 55 (2004); *Texas*, Defs.' Mem. Ex. 2, at 7; *see infra* at 9-10.

Plaintiffs respond that "a 'failure to act' need only be 'a discrete action' that

is 'legally required,'" not "agency action" as the APA defines it, 5 U.S.C.

§ 551(13).  Pls.' Opp'n at 14.  But *SUWA* made clear that § 706(1) "insist[s] upon

an 'agency action' … as the action to be compelled."  542 U.S. at 62.  Plaintiffs do

not argue that consultation under § 1522(a)(2)(A) is "agency action" under the

APA, and for this reason alone, Plaintiffs' APA claim should be dismissed.

Thus, Plaintiffs' claim that "each time the government fails to … consult and

make the required disclosures prior to the placement of refugees within [Alabama]

is a failure to take a *discrete* action," Pls.' Opp'n at 14 (emphasis added), is moot.

It is also without merit.  The Act does not require consultation about each refugee

resettled in a State, only consultation "on the sponsorship and placement process,"

to "enhance cooperation and communication … regarding placement strategies and

decisionmaking."  H.R. Rep. No. 99-132 at 18-19; *see* Defs.' Mem. at 17, 22-23;

*Texas*, *id.* Ex. 2 at 10 (consultation under § 1522(a)(2)(A) "is best understood as an

ongoing, dynamic process … not … discrete agency action…").[5]

_____

[5]  Neither case Plaintiffs cite, Pls.' Opp'n at 15, involved the type of ongoing consultation
at issue here.  And in neither case did the plaintiffs seek injunctive relief compelling the
defendant agencies to comply with statutory consultation requirements (as Plaintiffs do here);
rather, they sought to invalidate agency conduct allegedly undertaken without observing
mandatory consultation procedures.  *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d
1072, 1079, 1083-96 (9th Cir. 2011); *Salmon Spawning & Recovery All. v. U.S. Customs &*

### 3.     The Mandamus Act

Plaintiffs' request for mandamus relief also must be dismissed, because the

APA's cause of action to compel agency action unlawfully withheld constitutes an

alternative remedy,[6] and because Plaintiffs have no right, much less "a clear right

to the relief [they have] requested," such as the disclosure of information about

security risks allegedly posed by individual refugees.  Defs.' Mem. at 19-21, citing

*United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016).  Plaintiffs argue that

because they have alleged a lack of consultation as required by the Refugee Act,

they have stated "an appropriate basis" for mandamus relief.  Pls.' Opp'n at 17-18.

But as discussed below, Plaintiffs' allegations are either wholly conclusory, or do

not plausibly establish a violation of the Refugee Act entitling them to any relief,

much less the extraordinary relief of mandamus.  *See infra* at 9-10.[7]

---

*Border Prot.*, 550 F.3d 1121, 1127, 1130-34 (Fed. Cir. 2008).  Thus, neither case considered whether consultation itself is "agency action" as required to maintain a claim under § 706(1).

[6] Plaintiffs argue that the APA's provision for mandatory injunctive relief does not foreclose a mandamus claim where APA relief is "categorically unavailable."  Pls.' Opp'n at 16-17.  But the plaintiff in *Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011), was also categorically barred from obtaining APA relief, as it was not a member of the class protected by the statute on which it based its claim.  *Id.* at 1269-1270.  Nevertheless, the court held that "[t]he availability of [mandatory injunctive] relief under the [APA] ... foreclose[d] a grant of a writ of mandamus."  *Id.* at 1268.

[7] In both *Winnebago Tribe v. Babbitt*, 915 F. Supp. 157, 167-68 (D.S.D. 1996), and *Lower Brule Sioux Tribe v. Deer*, 911 F. Supp. 395 (D.S.D. 1995), *see* Pls.' Opp'n at 18, it was undisputed that the agency had not engaged in consultation called for by its policies.  The cases (decided by the same presiding judge) turned instead on the conclusion that the agency's internal guidelines were enforceable by mandamus.  *Winnebago*, 915 F. Supp. at 163, 167-68; *Lower Brule*, 911 F. Supp. at 398-400.  These cases do not help Plaintiffs, because their allegations fail to show that Alabama has been denied consultation on matters required by the Refugee Act.

**B.      Plaintiffs Have Not Stated a Failure to Comply With the Consultation Requirements of the Refugee Act.**

Even if Plaintiffs had a right of action, they have not pled a violation of the Refugee Act's terms, because the plain language of § 1522(a)(2)(A) does not require disclosure of security information or complete medical histories about individual refugees, to which Plaintiffs claim Alabama is entitled.  Defs.' Mem. at 21-24.  Plaintiffs respond that under Federal Rule of Civil Procedure 54(c), their "fail[ure] to demand the appropriate relief is not grounds for dismissal."  Pls.' Opp'n at 21.  The instant motion is not premised, however, on a failure to seek the right remedy, but the fact that Plaintiffs are not entitled to any remedy.

Under the plausibility standard of pleading, "a complaint must contain sufficient factual matter … [to] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Complaint does not meet this requirement, in its numbered paragraphs or in Plaintiffs' prayer for relief.  The allegations on which Plaintiffs principally rely as stating a failure by Defendants to consult with Alabama, Pls.' Opp'n at 17-18, are "naked assertions, devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678.  *See* Compl. ¶¶ 2, 9-16 (conclusory allegations that "[t]he consultation [required by the Refugee Act] has not occurred," and that the named Defendants "ha[ve] failed to fulfill [their consultation] obligations").  As such, they do not suffice to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678-79.

9

The sole allegations even purporting to explain the basis of Plaintiffs' claim, Compl. ¶¶ 23, 37, assert that Defendants have not provided Alabama "sufficient information" about refugees who have been or will be resettled there, denied it a "meaningful role" in their resettlement, failed "to consult adequately" about their placement within the State, and withheld "information necessary" to assess the security risks they pose and "adequately plan" for their arrival.  These, too, are "mere conclusory statements" that do not give rise to a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *see Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  But even if accepted as "factual enhancement," these allegations simply mirror the disclosures demanded in the Complaint's prayer for relief, *compare* Compl. ¶¶ 23, 37, *with id.* at 14 (Request for Relief), which are not required by the Refugee Act.  Whether the Court looks to the body of the Complaint or the request for relief for a factual statement of the information and consultation opportunities that Alabama has supposedly been denied, the Complaint does not plausibly state a violation of the Refugee Act.[8]

## CONCLUSION

This case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[8] Plaintiffs also contend that they are entitled to discovery regarding facts presented by the Federal Government in opposition to the plaintiff's motions for preliminary relief in *Texas*. Pls.' Opp'n at 18-19.  Defendants do not rely on those facts, however, to contest the sufficiency of Plaintiffs' allegations in this case, and so they are irrelevant to a decision here.  In any event, before Plaintiffs can "unlock the doors of discovery" they must state a plausible claim based on something "more than conclusions."  *Iqbal*, 556 U.S. at 678-79.  They have not done so.

10

Dated:  April 12, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

JOYCE WHITE VANCE
United States Attorney

JOSEPH H. HUNT
Director

SHEILA M. LIEBER
Deputy Director

ANTHONY J. COPPOLINO
Deputy Director


 */s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

MICHELLE R. BENNETT
Trial Attorney

STUART J. ROBINSON
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Room 6102
Washington, D.C.  20530
Tel:  (202) 514-3358
Fax: (202) 616-8470
Email: james.gilligan@usdoj.gov

*Attorneys for Defendants*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

*/s/ James J. Gilligan*
JAMES J. GILLIGAN
