IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:16-cv-00029-JEO |
| ) | |
| ) | **ORAL ARGUMENT** |
| UNITED STATES OF AMERICA, et al., ) | **REQUESTED** |
| ) | |
| Defendants. ) | |

**SUR-REPLY TO GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

The State of Alabama and the other plaintiffs offer the following sur-reply to the government's reply in support of its motion to dismiss, regarding the sovereign immunity argument the government raised for the first time in that reply.

**INTRODUCTION**

The government is incorrect to assert that Count I is barred by sovereign immunity. The government originally argued that Count I should be dismissed because § 1522(a)(2)(A) does not provide for an implied right of action. Alabama responded to that argument in its opposition brief, and demonstrated that the Refugee Act does indeed provide for such a right.

In its reply brief, the government engaged in something of a bait-and-switch, arguing that because § 1522(a)(2)(A) does not contain an express right of action,

Count I is due to be dismissed on sovereign immunity grounds, because sovereign immunity can only be waived expressly in a particular statute. The implied-right-of-action argument is now the government's fallback position, if it is unsuccessful in convincing the Court that sovereign immunity bars Count I.

Sovereign immunity does not bar Count I. Alabama is entitled to invoke this Court's equitable powers to award declaratory and injunctive relief against federal officials who are violating Alabama's rights under federal law. That is a right any plaintiff has, and the principles underlying it apply with equal, if not greater, force when the State is a plaintiff.

## ARGUMENT

**I.  As explained in *Ex parte Young*, the Court may award declaratory and injunctive relief in official-capacity suits, under the fiction that the officer's failure to follow the law strips him of his office and thus removes any sovereign immunity defense.**

The principle that an official may be sued for failing to follow the law was famously articulated in *Ex parte Young*, where the Supreme Court held that when a State official violates federal law, he is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." 209 U.S. 123, 159-60 (1908). The suit remains an official-capacity suit, but it is allowed to proceed despite sovereign immunity under the fiction that the official is stripped of his office for purposes of the suit because he acted outside of his authority when he violated federal law. *See Hatfill v. Gonzales*, 519 F. Supp. 2d

13, 26-27 (D.D.C. 2007) (dismissing claims for declaratory and injunctive relief against federal officials in their individual capacities, because such relief may only be awarded against such officials in their official capacities); *id.* at 26 ("'The twin goals served by the *Young* exception to the Eleventh Amendment immunity— vindicating federal rights and holding state officials responsible to federal law— cannot be achieved by a lawsuit against a state official in his or her individual capacity [because] individual [or personal] capacity suits do not seek to conform the State's conduct to federal law; rather, such suits seek recovery from the defendant personally.'") (quoting *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002)).

## II. The *Ex parte Young* principle applies in suits against federal officials.

As recognized in *Hatfill*, the same principle applies to federal officials when they violate federal law, and that has been the case for a very long time. *See, e.g., Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) (observing that "we have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law" and that this "has been true not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials.") (citing *American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); L. Jaffe, Judicial Control of Administrative Action 152-196

3

(1965)); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-91 (1949) ("'[I]n case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. . . . And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred.'") (quoting *Philadelphia Co. v. Stimson*, 223 U.S. 605, 620 (1912)); *Hatfill*, 519 F. Supp. 2d at 26 ("'[C]ourts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringement of federal rights.'") (quoting *Rhode Island Dept. of Envtl. Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002)).[1]

### III. The Eleventh Circuit has recognized and applied this principle.

The Eleventh Circuit has recognized and applied this principle in cases seeking declaratory and injunctive relief against federal officials. *See Made in the USA Found. v. United States*, 242 F.3d 1300, 1308 n.20 (11th Cir. 2001) ("Although the Government does not raise this issue, we note that sovereign immunity does not act as a bar to our exercising jurisdiction over this case. . . . [T]he so-called *Larson–Dugan* exception permits suits to go forward alleging that a

---

[1] Consistent with this authority, the D.C. Circuit has held that the APA's waiver of sovereign immunity, found at 5 U.S.C. § 702, "applies to any suit whether under the APA or not." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (citations omitted).

government[] official's actions were unconstitutional or beyond statutory authority, on the grounds that such actions 'are considered individual and not sovereign actions.'") (quoting *Larson*, 337 U.S. at 689; citing *Dugan v. Rank*, 372 U.S. 609, 621-23 (1963) and *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996)); *Doe v. Wooten*, 376 F. App'x 883, 884 (11th Cir. 2010) (per curiam) ("[W]e agree with the parties that a plaintiff may be able to obtain injunctive relief against a federal officer acting in his official capacity when the officer acts beyond statutory or constitutional limitations.") (citations omitted). *See also Clay v. Thompson*, No. 2:14-CV-131-WKW, 2014 WL 3655990, at *6 (M.D. Ala. July 23, 2014) ("[A] plaintiff may be able to obtain injunctive relief—even an injunction compelling affirmative action—against a federal officer acting in his official capacity 'when the officer acts beyond statutory or constitutional limitations.'" (quoting *Doe*, 376 F. App'x at 884; citing *Doe v. Wooten*, 747 F.3d 1317, 1321 n.[2] (11th Cir. 2014) and *Saine v. Hospital Authority of Hall County*, 502 F.2d 1033 (5th Cir. 1974)).

Indeed, the Eleventh Circuit has observed that "it is a tautology that a federal officer's actions lie outside the scope of his authority when the officer fails to comply with the affirmative requirements of federal statutory or regulatory law . . . and his actions fail to qualify as 'necessary and proper' if committed in violation of the negative injunctions of the Constitution." *Denson v. United States*, 574 F.3d 1318, 1347-48 (11th Cir. 2009) (citations omitted).

## IV. The government's cited cases are not to the contrary or are distinguishable.

The government's cited cases are not to the contrary, or are distinguishable. Two of them dealt with the question of monetary damages, which Alabama is not seeking in this case. *See Ishler v. IRS*, 237 F. App'x 394, 397-98 (11th Cir. 2007) (per curiam) (concluding, in the absence of a waiver of sovereign immunity, that "state law claims for monetary damages against the IRS and Agent Richardson, in his official capacity, were properly dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1)."); *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (reversing and remanding trial court's holding that the General Allotment Act "provides Indian allottees a cause of action for money damages against the United States.").

In the third case, after holding that plaintiffs had recourse under the APA, and that the language of the Frost-Leland Amendment was not "indicative of a congressional intent to create a private cause of action against HUD outside of the [APA]," the Fifth Circuit also observed that sovereign immunity "militate[d] against" finding such an intent. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1054 (5th Cir. 1993). In so doing, the court relied on *Mitchell* and another damages case, *Miller v. United States*, 710 F.2d 656 (10th Cir. 1983).

Finally, *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1208-10 (11th Cir. 2012), is of no assistance to the government either.

There, the Eleventh Circuit followed a binding Supreme Court case holding that the Indian Civil Rights Act provided no basis to subject the tribe to suit, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978). *Id.* at 1208-09. But the Eleventh Circuit expressly reserved judgment on the question of whether the tribe's officers could be sued under the principle set forth in *Ex parte Young*, because that question was not raised on appeal. *Id.* at 1209 n.4 (citing *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1225 (11th Cir. 1999) ("[T]ribal officers are protected by tribal sovereign immunity when they act in their official capacity and within the scope of their authority; however, they are subject to suit under the doctrine of *Ex Parte Young* when they act beyond their authority.")).

As it is entitled to do under *Ex Parte Young* and similar authority, Alabama seeks declaratory and injunctive relief against the relevant federal officials and agencies in Count I.

## CONCLUSION

For these reasons, and those set forth in their opposition brief (doc. 19), plaintiffs request that the Court deny the government's motion to dismiss.

DATED: April 20, 2016                           Respectfully submitted,

                                                             s/ Robert K. Spotswood

| | |
|---|---|
| David B. Byrne, Jr. | Robert K. Spotswood |
| *Chief Legal Advisor* | Joshua K. Payne |
| Carrie Ellis McCollum | *Deputy Attorneys General* |
| *Deputy Legal Advisor* | SPOTSWOOD SANSOM & |
| OFFICE OF GOVERNOR ROBERT | SANSBURY LLC |
| BENTLEY | One Federal Place |
| Alabama State Capitol | 1819 Fifth Avenue North, Suite 1050 |
| 600 Dexter Avenue, Suite NB-05 | Birmingham, Alabama 35203 |
| Montgomery, Alabama 36130 | TEL: (205) 986-3620 |
| TEL: (334) 242-7120 | FAX: (205) 986-3639 |
| FAX: (334) 242-2335 | rks@spotswoodllc.com |
| pam.chesnutt@governor.alabama.gov | jpayne@spotswoodllc.com |
| carrie.mccollum@governor.alabama.gov | |

                                              *Attorneys for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on April 20, 2016, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel of record.

                                          s/ Joshua K. Payne
                                          OF COUNSEL